IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **NICOLE POSTON**<br>3407 Trade Winds Cove, NW<br>Canton, OH 44708<br><br>    Plaintiff,<br><br><br>  v.<br><br>**MASSILLON CITY SCHOOLS**<br>c/o Richard Goodright, Superintendent<br>930 17th Street NE<br>Massillon, Ohio 44646<br><br>    Defendant. | CASE NO.<br><br>JUDGE:<br><br>MAGISTRATE:<br><br>**CIVIL COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, THE REHABILITATION ACT, AND THE OHIO FAIR EMPLOYMENT PRACTICES ACT**<br><br>**JURY DEMAND ENDORSED HEREON** |

Now comes Plaintiff, Nicole Poston, by and through counsel, and for her Complaint against Defendant, the Massillon City Schools, states as follows:

**INTRODUCTION**

1. This is an action to vindicate the legal rights Plaintiff Nicole Poston, an individual with a disability employed by Defendant Massillon City Schools, for violations of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et al.*; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et al.*; and the Ohio Fair Employment Practices Act, R.C. § 4112.01 *et al.*

**PARTIES, JURISDICTION, AND VENUE**

2. Plaintiff, Nicole Poston is a person with a disability residing in Canton, Ohio.

1

3. Plaintiff has a visual impairment due to anaridia, a genetic condition which has resulted in significant reduction in Plaintiff's visual acuity and ability to distinguish details of small letters and symbols, particularly in low light.

4. Plaintiff is legally blind, with a corrected visual acuity of 20/200 or less.

5. Due to her visual impairment, Plaintiff is substantially limited in the major life activities of seeing, reading, and traveling.

6. Defendant, Massillon City Schools, is a public entity providing educational services located in Massillon, Ohio 44646, and is within the territorial jurisdiction of this Court.

7. Defendant receives federal funding from the U.S. Department of Education for educational programs and activities.

8. This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, as well as pursuant to 28 U.S.C. § 1367 for pertinent state law claims.

9. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391 as the incidents, events, or omissions complained of and giving rise to the instant claim or controversy occurred within this district.

## FACTS

10. Plaintiff Nicole Poston is a special education teacher with a disability who was hired by the Massillon City Schools as a Small Group Instructor in fall 2002.

11. Due to her visual impairment, Plaintiff requires large print or magnification in order to read print materials.

12. At the time she was hired, Plaintiff informed Defendant personnel of her disability, and her need for reasonable accommodations in accessing printed and written material.

13. Plaintiff also informed Defendant personnel that due to her low vision, traveling at night was difficult.

14. Plaintiff requested and received from Defendant reasonable accommodations to avoid scheduling evening meetings during the winter months, when days are shorter.

15. Plaintiff is a qualified special education instructor, and is responsible for providing individualized instruction in language arts and mathematics to elementary and middle school students with disabilities.

16. In performing her job duties in the classroom, Plaintiff utilizes magnifiers to assess student printed work and prepares large print copies of instructional materials to work with students.

17. To access workplace materials on the computer, Plaintiff utilizes a large monitor and Zoomtext, a magnification software program.

18. As part of her job duties, Plaintiff is also required by Defendant to attend regular professional development meetings, staff meetings, and trainings.

19. Throughout her employment, Plaintiff has requested the reasonable accommodation of large print format of at least 18 point font for all printed

materials containing letters and symbols in instructional materials for professional development meetings, staff meetings, trainings and other work related correspondence.

20. From 2002 through 2013, Defendant regularly provided Plaintiff with written materials in large print as a reasonable accommodation and accommodated Plaintiff's night driving limitation by scheduling meetings during the day where possible.

21. Beginning in January 2014 and continuing to the present, Defendant has failed to provide Plaintiff with accessible printed and written materials, including information on workplace policies, staff training materials, and information regarding workplace evaluations.

22. While Plaintiff has made more than a dozen formal complaints in the past two years identifying instances in which effective accommodations were not provided, and Defendant has convened dozens of meetings to engage in the interactive process to discuss Plaintiff's need for reasonable accommodations, Defendant has failed to take steps to ensure that the reasonable accommodations Plaintiff has requested are actually provided.

23. Due to Defendant's failure to consistently provide reasonable accommodations, Plaintiff has not received timely access to critical information she needs to perform her workplace duties to the same degree as her sighted colleagues without disabilities.

### *Accommodations denied*

24. In early January 2014, Plaintiff was required to attend a workplace meeting after dusk, and prior to the meeting, Plaintiff requested that the meeting be rescheduled due to her disability related restrictions on traveling at night.

25. Defendant denied Plaintiff's request for an accommodation to reschedule the meeting, and demanded additional documentation from Plaintiff regarding her disability related limitations and need for accommodations.

26. Following the January 8, 2014 meeting, Plaintiff made an internal complaint with Defendant regarding the denial of reasonable accommodations, and Plaintiff and representatives of Defendant met to engage in the interactive process regarding Plaintiff's need for disability related workplace accommodations.

27. On February 3, 2014, the parties reached a written agreement that Defendant would accommodate Plaintiff's disability related needs with respect to scheduling meetings, and that written materials would be provided in large print at or before professional in-service trainings, workshops, and staff meetings.

28. On or about May 23, 2014, Defendant held a required in-service training regarding district policies for Student Learning Objectives (SLO's).

29. Defendant did not provide a copy of the written materials for the SLO training to Plaintiff in large print format.

30. Plaintiff, through counsel, requested copies of the training materials in large print, but copies were not provided.

### *First EEOC Charge*

31. On June 30, 2014, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging that Defendant had denied Plaintiff reasonable accommodations by failing to provide written materials from professional development trainings in an accessible large print format, and by requiring Plaintiff to attend an evening meeting despite her disability related restriction on traveling after dark.

32. Thereafter, Defendant consistently and regularly failed to provide large print or accessible materials to Plaintiff.

33. On or about September 2014, at a meeting to discuss accommodations, Assistant Superintendent Mark Fortner, the District's designated ADA Coordinator, informed Plaintiff that Defendant had decided it would provide materials electronically, rather than in large print.

34. Plaintiff advised Mr. Fortner that providing information solely in electronic format was not an effective accommodation.

35. On October 22, 2014, the District held a staff workshop on special education data presented by staff from the Ohio Department of Education State Support Team 9.

36. At the October 22, 2014 meeting materials were presented in inaccessible formats, and the District failed to provide large print or electronic materials.

37. On October 23, 2014, Mr. Fortner sent a letter to Plaintiff advising that the District would be providing a laptop with Zoomtext for Plaintiff to use during trainings, and that "the District will make best efforts to provide you an electronic copy of presentations/handouts via its shared drive or by email prior to the scheduled meeting."

38. On or about November 5, 2014, Defendant provided individualized training to special education small group teachers, but not to Plaintiff, regarding compliance with policy regarding Student Learning Objectives.

39. On November 11, 2014, Plaintiff sent an email to District administrators expressing her disappointment that further SLO training had not been provided, though she believed that such training had been promised.

40. On December 1, 2014, Mr. Fortner reprimanded Plaintiff for her email, claiming that it violated Defendant's internet use policy, a copy of which had been provided to Plaintiff in an inaccessible print format, and Mr. Fortner presented and required Plaintiff to sign written documents in an inaccessible print format.

41. At the December 1, 2014 meeting, Plaintiff discussed her need for large print as a reasonable accommodation, and advised that she continued to attend meetings and trainings at which materials were provided in an inaccessible format.

42. On behalf of the District, Mr. Fortner informed Plaintiff that Defendant had decided to provide a laptop and Zoomtext instead of large print materials, and that in any event the District would not agree to provide materials in 18 point font.

43. On December 11, 2014, Plaintiff attended a District training on the Ohio Teacher Evaluation System (OTES), but Defendant failed to provide accessible materials in 18 point font, and the training included inaccessible videos which were not provided to Plaintiff in advance.

44. On January 13, 2015, Defendant held a meeting of special education instructors, including Plaintiff to provide training on compliance with new state standards for student Individualized Education Programs (IEPs), but materials were not provided in an accessible format to Plaintiff.

45. On or about January 16, 2015 Defendant held an all day in-service training for special education instructors, which featured an inaccessible powerpoint presentation and books and other written materials in an inaccessible format.

46. On or about January 21, 2015, Defendant held a staff training on technology which featured an inaccessible powerpoint presentation which was not provided to Plaintiff.

47. On or about January 28, 2015, Defendant conducted a teacher observation of Plaintiff, but provided the evaluation rubric in an inaccessible print format in 10 point font.

48. On March 25, 2015, Defendant conducted an in house training for teachers on Positive Behavioral Supports and Interventions which featured inaccessible print handouts, video, and a powerpoint presentation which was provided only after the conclusion of the presentation.

49. On April 29, 2015, Defendant conducted an in house training for teachers on Problem Based Learning, which featured inaccessible print handouts, and a video and powerpoint presentation which was not provided to Plaintiff prior to the training.

50. On July 13, 2015, Defendant offered a training on use of Google and email, and although Plaintiff had been advised that the materials would be shared in advance via Google docs, the presentation consisted of a video demonstration and accessible materials were not provided prior to the training.

51. On August 18, 2015, at the beginning of the new school year Plaintiff was required to attend a district wide staff meeting for special education teachers regarding District policy, but the materials for the meeting were not provided in advance or in an accessible hardcopy format.

52. Also on August 18, 2015, Plaintiff was required to attend a building wide staff meeting for all building staff, but the materials for the meeting were not provided in advance or in an accessible hardcopy format, and consequently Plaintiff was unable to follow along or contribute to discussions during the training with her fellow educators.

53. On August 19, 2015, Plaintiff was required to participate in a full day professional development training which featured three separate sessions presenting written information via video, powerpoint, or hardcopy formats, much of which was inaccessible and not provided to Plaintiff in advance.

54. On August 20, 2015, Defendant provided Plaintiff with human resources forms, including medical and emergency contact forms, in inaccessible hardcopy format.

55. On August 26, 2015, Plaintiff emailed Mr. Fortner to advise that accommodations had not been provided on numerous occasions in the new school year, and requesting a meeting to discuss Plaintiff's need for reasonable accommodations.

56. On August 31, 2015, Defendant provided an additional employment form in her mailbox in an inaccessible hardcopy format.

57. On September 2, 2015, Mr. Fortner responded to Plaintiff's request for a meeting with a letter stating that Defendant would agree to schedule a meeting after Plaintiff produced a list identifying every instance in which an accommodation had not been provided, including the date, time, location, specific accommodation, and the date of any meeting with the administration to discuss the lack of accommodations.

58. On September 6, 2015, Plaintiff utilized Defendant's EEO internal complaint form to identify seven instances from August 18, 2015 through August 31, 2015 in which Defendant failed to provide printed materials in an accessible format.

59. After she failed to receive a response from Mr. Fortner regarding her complaints within the District's thirty-day time line, on October 1, 2015 Plaintiff appealed each complaint to the District Superintendent, Richard Goodright.

60. On October 7, 2015, Mr. Fortner delivered a letter to Plaintiff advising that he had reviewed the internal complaints, and requesting two meetings to discuss the matter the following week, at 3:45 on October 13 and 15.

61. On October 8, 2015 Plaintiff responded to Mr. Fortner, advising that she was unavailable on the dates he proposed, suggesting October 14, 2015 as an alternative meeting date, objecting to holding two separate meetings, reminding him that evening meetings pose an issue due to her restriction on nighttime travel, and noting that per District policy, the meeting should have taken place more than a week earlier.

62. Mr. Fortner did not respond to Plaintiff's October 8, 2015 request to meet on October 14, 2015 until after the date had already passed.

63. On October 12, 2015, Plaintiff was required to participate in a professional development day training in which materials for four separate sessions were provided in an inaccessible format, and technical issues with the laptop Defendant provided prevented Plaintiff from having access to the materials in an accessible format during the training.

64. On October 14, 2015, during a union contract negotiation session involving Plaintiff and Mr. Fortner, Defendant presented written material to Plaintiff in an inaccessible format.

65. On October 15, 2015, Plaintiff wrote to Mr. Fortner and Mr. Goodright advising that she was available to meet to discuss her concerns regarding

accommodations on either October 20 or October 22, 2015, but that she was unwilling to postpone a meeting any further.

66. On October 20, 2015, Plaintiff filed five additional EEO complaint forms regarding Defendant's failure to provide reasonable accommodations during the October 12, 2015 professional development training, and during the October 14, 2015 union negotiation session.

67. On October 20, 2015, Plaintiff participated in a meeting with Defendant, in which counsel for Defendant and Plaintiff were both present, to discuss the denial of reasonable accommodations, but no resolution was reached.

68. On November 4, 2015, Plaintiff participated in a second meeting to discuss the five new complaints she had filed on October 20, 2015, but no resolution was reached.

69. On November 18, 2015, Plaintiff was required to participate in a professional development training, which featured an inaccessible powerpoint presentation, videos, and handouts.

70. On November 25, 2015, Defendant issued a response to Plaintiff's twelve complaints identifying instances in which reasonable accommodations were not provided, concluding that "there was not a clear and mutual understanding regarding your specific accommodations" and recommending an additional meeting to discuss accommodations and come to a written agreement concerning accommodations and implementation.

71. On November 30, 2015, Plaintiff filed a new EEO complaint regarding the lack of accessible materials during the November 18, 2015 professional development training, and requested a meeting to discuss accommodations and that training on ADA compliance be provided to District employees.

72. On December 16, 2015, Defendant issued a response to Plaintiff's November 30 EEO complaint, concluding that there was no mutual agreement regarding accommodations and noting that "some instances where accommodations were not provided may be attributed to lack of understanding of the accommodation by the person/people responsible for providing the documentation, lack of communication, lack of time or control", and reiterating the prior recommendation that the parties meet and come to a written agreement concerning accommodations and implementation.

73. Also on December 16, 2015, Plaintiff was required to attend a professional development training which featured an inaccessible video presentation that was not provided to Plaintiff.

74. On December 30, 2015, Plaintiff filed a second charge of discrimination regarding Defendant's failure to provide effective reasonable accommodations by consistently failing to provide written and printed materials to Plaintiff in an accessible format.

75. On January 25, 2016, Plaintiff participated in a meeting with Defendant and Defendant's counsel to discuss the reasonable accommodations she

needed at work, and Defendant requested that Plaintiff identify the accommodations she was requesting in writing.

76. On February 11, 2016, Plaintiff delivered a written list to Defendant identifying her requested accommodations.

77. On March 16, 2016, Plaintiff was required to attend a professional development training regarding state testing standards, but materials were provided to Plaintiff in an inaccessible format rather than 18 point font as she had requested.

78. On March 17, 2016, after receiving no further response to her written request for reasonable accommodations, Plaintiff sent a letter to Mr. Goodright and Mr. Fortner requesting an update on the status of her request.

79. On March 23, 2016, the parties engaged in another meeting to discuss Plaintiff's request for reasonable accommodations, but no resolution was reached.

80. On April 20, 2016, Plaintiff attended a staff meeting, which included a presentation in which some materials were provided in an inaccessible format.

81. On May 19, 2016, Plaintiff attended a staff meeting which featured an inaccessible Smartboard presentation and a group project with inaccessible hardcopy print forms, making it impossible for Plaintiff to follow along with the group discussion.

82. On June 28, 2016, Plaintiff participated in a meeting with Defendant regarding her request for reasonable accommodations, and presented a counter proposal to Plaintiff, but no resolution was reached regarding accommodations.

83. On July 26, 2016, Plaintiff participated in another meeting with Defendant to discuss reasonable accommodations, and Defendant proposed that Plaintiff be required to submit to a "fitness for duty" medical examination.

84. On August 19, 2016, Plaintiff participated in an all day in service training program, at which materials for one session were provided in inaccessible hardcopy format.

85. On September 30, 2016, Plaintiff received a right to sue letter from the EEOC dated September 23, 2016 and postmarked September 27, 2016, therefore she has satisfied all procedural requirements prior to commencing this action.

## COUNT ONE
### Title I of the Americans with Disabilities Act

86. Plaintiff realleges and incorporates herein all allegations contained in the preceding paragraphs.

87. Plaintiff is a qualified person with a disability, who is able to perform the essential functions of her job with reasonable accommodations.

88. Defendant is an employer and a covered entity subject to Title I of the Americans with Disabilities Act.

89. Plaintiff has informed Defendant of her disability related need for reasonable accommodations in accessing printed and written materials.

90. Plaintiff has requested as a reasonable accommodation that Defendant provide her with written and printed materials in an accessible format, in at least 18 point font.

91. The proposed accommodations that Defendant has agreed to provide are not effective for Plaintiff.

92. Defendant has failed to take reasonable steps to ensure that effective accommodations are provided to Plaintiff.

93. Defendant has discriminated against Plaintiff on the basis of disability by failing to provide reasonable accommodations in regard to job training, in violation of 29 U.S.C. § 12112(a) and 29 U.S.C. § 12112(b)(5)(A).

94. Defendant has discriminated against Plaintiff on the basis of disability by failing to provide reasonable accommodations in regard to the terms, conditions, and privileges of employment, in violation of 29 U.S.C. § 12112(a) and 29 U.S.C. § 12112(b)(5)(A).

95. Defendant has discriminated against Plaintiff on the basis of disability by denying her employment opportunities because of her disability in violation of 29 U.S.C. § 12112(a) and 29 U.S.C. § 12112(b)(5)(B).

96. By engaging in the foregoing conduct, Defendant has violated Title I of the Americans with Disabilities Act.

97. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered emotional harm and distress.

98. Defendants acted willfully and in reckless disregard for the rights of Plaintiff, entitling her to compensatory and punitive damages, and injunctive relief.

## COUNT TWO
### *Section 504 of the Rehabilitation Act of 1973*, 29 U.S.C. § 701, *et al.*

99. Plaintiff realleges and incorporates herein all allegations contained in the preceding paragraphs.

100. Defendant is a program or activity receiving Federal financial assistance as defined by the Rehabilitation Act as amended, 29 U.S.C. § 794(b).

101. Plaintiff is a qualified person with a disability who is able to perform the essential functions of her job with accommodations.

102. Plaintiff has informed Defendant of her disability related need for reasonable accommodations in accessing printed and written materials in the workplace.

103. Plaintiff has requested as a reasonable accommodation that Defendant provide her with written and printed materials in an accessible format, in at least 18 point font.

104. The proposed accommodations that Defendant has agreed to provide are not effective for Plaintiff.

105. Defendant has failed to take reasonable steps to ensure that effective accommodations are provided to Plaintiff.

106. Plaintiff is an otherwise qualified individual with a disability who has been denied the benefits of and subjected to discrimination by Defendant solely because of disability, in violation of 29 U.S.C § 794(a).

107. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered emotional harm and distress.

108. Defendants acted willfully and in reckless disregard for the rights of Plaintiff, entitling her to compensatory and punitive damages, and injunctive relief.

## COUNT THREE
### *Ohio Fair Employment Practices Act, R.C. § 4112.01 et al.*

109. Plaintiff realleges and incorporates herein all allegations contained herein as if fully rewritten.

110. Plaintiff is a qualified person with a disability, who is able to perform the essential functions of her job with reasonable accommodations.

111. Defendant is an employer and covered entity subject to the Ohio Fair Employment Practices Act, R.C. § 4112.01 *et al.*

112. Plaintiff has informed Defendant of her disability related need for reasonable accommodations in accessing printed and written materials.

113. Plaintiff has requested as a reasonable accommodation that Defendant provide her with written and printed materials in an accessible format, in at least 18 point font.

114. The proposed accommodations that Defendant has agreed to provide are not effective for Plaintiff.

115. Defendant has failed to take reasonable steps to ensure that effective accommodations are provided to Plaintiff.

116. By engaging in the forgoing conduct, Defendant has committed an unlawful discriminatory practice in violation of R.C. § 4112.02(A).

117. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered emotional harm and distress.

118. Defendant acted willfully and in reckless disregard for the rights of Plaintiff, entitling her to compensatory and punitive damages, and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Honorable Court grant Plaintiff judgment against Defendant as follows:

    a.    Compensatory damages in an amount to be determined at trial;

    b.    A declaratory judgment that Plaintiff is entitled to large print materials as a reasonable accommodation;

    c.    Interest on all sums found due to Plaintiff;

    d.    Reasonable Attorney's fees;

    e.    Court costs; and

    f.    Any additional relief deemed equitable and just.

Respectfully submitted,

/s/ Emily White
Emily White (0085662)
Marc E. Dann (0039425)
THE DANN LAW FIRM
P.O. Box 6031040
Cleveland, OH  44103
Phone (216) 373-0539
Fax (216) 373-0536
notices@dannlaw.com

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Emily White
Emily White (0085662)
THE DANN LAW FIRM