<u>**MEMORANDUM IN SUPPORT**</u>

**I.      Introduction**

Since the beginning of Plaintiff Nicole Poston's employment with Defendant Massillon City School District Board of Education in 2002 as a Special Education Teacher, the Board has dutifully provided Plaintiff with several reasonable accommodations for her visual impairment. In February, 2014, the Board and Poston formally engaged in the interactive process and agreed to a written accommodation plan that memorialized both current and new accommodations, including materials for teacher meetings, in-services/trainings, and professional development meetings in at least 14 point font size, and a large computer monitor and laptop with Zoomtext magnification software.

Despite the agreement reached by the Parties and the Board's good faith efforts, Plaintiff claims the Board discriminated against her on the basis of her disability by failing to provide her with reasonable accommodations in regard to job training.  Essentially, tension arose between the Board and Plaintiff concerning font size as she believes Defendant should have provided her with written and printed materials in at least 18 point font size.  The Board, however, has not only consistently provided materials to Poston for meetings and in-services/trainings in an accessible manner in hard copy or electronic format, but has attempted to provide Plaintiff with such materials as soon as possible if they were not provided on an inadvertent/mistaken basis. Moreover, given the Board's commitment to ensuring that Poston was consistently provided with reasonable accommodations, the Board met with Poston to further engage in the interactive process and revise the previous accommodation plans to meet Poston's needs and the Parties' expectations.

Plaintiff, therefore, cannot meet her burden to show Board liability because Defendant has not denied Poston's requests for reasonable accommodations.  Rather, Defendant has provided all necessary accommodations to Plaintiff and has, in no way, discriminated against Plaintiff on the basis of her disability.  As no genuine issues of material fact exist, Defendant is entitled to judgment as a matter of law.

## II.     Statement of Facts

Poston is employed by the Board in the teaching position of Intervention Specialist.  See, *Affidavit of Mark Fortner* at Exhibit 1 ("*Fortner Aff.*").  She has been employed in this position since August of 2017 (since the beginning of the 2017-2018 school year).  *Id.*, and Exhibit A attached thereto.  Prior to the 2017-2018 school year, Plaintiff was employed in the position of Small Group Teacher/Instructor ("SGT").  *Fortner Aff.*  She held this position from the time she began working in the District in August, 2002 (i.e., beginning of the 2002-2003 school year, until June, 2017 (i.e., the end of the 2016-2017 school year).  *Id.*, Exhibit B.  Throughout Poston's employment she has consistently received positive evaluations, and during the 2014-2015 School Year, Poston's Final Summative (Overall) Rating was Accomplished which is the highest rating a teacher can receive.  *Fortner Aff.*, Exhibit V; *Poston D.t.* 23**.**

As an SGT, Poston was responsible for providing services to students with mild to moderate special needs by writing IEPs and behavior plans, and collaborating with other teachers.  *Poston Deposition Transcript* ("*D.t*"), 13, 20.  She was assigned a specific caseload of students, and provided language arts and math services to such students in the inclusion classroom and in a small group setting in enrichment time.  *Poston D.t.* 18-19.  In addition to her other job duties, Poston, like other teachers in the District, attends teacher meetings, in-

services/trainings, and professional development meetings throughout the school year. *Poston D.t.* 40.

Poston has a visual impairment due to anaridia (a genetic condition) and is considered legally blind. *Poston D.t.* 30-31. Since the time Plaintiff began her employment in the District in August, 2002, the Board has provided her with reasonable accommodations. *Fortner Aff.* Each of the accommodations provided to Plaintiff between August, 2002 (i.e., since the beginning of the 2002-2003 school year) and December, 2013 (i.e., mid-2013-2014 school year) were implemented upon her request to various administrators in the District, without any formal requests being submitted, formal interactive process, or formal plan being implemented. *Id.*; *Poston D.t.* 43-44, 56. Rather, Poston verbally notified the District of her need for accommodation, and spoke with then-Director of Curriculum John Graven regarding her needs, who informally engaged in the interactive process with Poston, and, in turn, communicated with other administrators regarding the accommodations being provided to Poston. *Poston D.t.* 51-52, 56. Indeed, among other things, the District provided Poston with documents in large print, Zoomtext magnification software, priority status for addressing technology issues, and adjustment to meeting times as she is restricted to traveling during the daytime. *Id.*, 44-54. If Plaintiff did not receive materials in large print either before or during meetings and in-services/trainings, she would simply ask the District to provide them in an accessible format, and they would be provided at a later time. *Id.*, 49.

Although reasonable accommodations were consistently being provided to Plaintiff as requested, she filed an internal complaint on January 9, 2014, alleging that the Building Administrators refused to provide her with an accommodation by moving the time of a Small

Group Instructor meeting.[1]  *Fortner Aff.*  Poston served as the President of the Association of Group Teachers at the time, and the parties held a meeting on January 8, 2014, to address an unrelated labor issue.  *Id.*, Exhibit C; *Poston D.t.* 62-64.  In response to Plaintiff's internal complaint, the Board's attorney and Assistant Superintendent Mark Fortner met with Poston and her attorney on a few occasions between January 9, 2014, and February 3, 2014, to discuss the complaint, review all past, current, and potential additional accommodations provided to Plaintiff by the Board, and to engage in the interactive process.  *Id.; Poston D.t.* 70.

As a part of the interactive process and review of accommodations, the Board and Poston signed a letter dated February 3, 2014, memorializing the reasonable accommodations that would be provided to Plaintiff for the 2013-2014 school year and future years.  *Id.*, Exhibit D.  In relevant part, the District agreed to continue to provide Poston with the previous accommodations, as well as:  1) Copies of in-service or training materials in 14 point font size or more[2] either during in-services/trainings or by email in advance of such meeting; and 2) A large screen computer monitor; and 3) A laptop computer so she could actively participate in-services and trainings.  Id., Exhibit D.  Following the execution of the *First Plan*, Fortner promptly notified the administrators (identified in the *Plan*) of Plaintiff's need for accommodation, and provided each of them with a copy of the *Plan*.  *Id.*, Exhibit E.

Although the Board attempted to comply with the terms with the *First Plan*, there were times during the remainder of the 2013-2014 school year when outside presenters did not initially provide materials in an accessible format.  *Id.*  The District, however, obtained those materials from the presenters and provided them to Poston in an accessible format.  *Id.*

---

[1] Plaintiff testified that in 2014, she started keeping track of the instances when she was not provided with materials in an accessible format.  *Poston D.t.*, 66.

[2] Prior to 2014, Plaintiff did not articulate a specific font size, but, showed the District an example. Id., 44,76

Additionally, in May, 2014, the District did not provide Plaintiff with a document in an accessible format prior to a scheduled in-service/training. *Id.* The District immediately enlarged the materials and provided a copy of the materials to Poston in an accessible format during the in-service/training. *Id.*

Given that various issues had arisen with the implementation of the *First Plan*, including the fact that that District found that it was very difficult to enlarge each handout to a 14 point font size for in-services/trainings, the Parties agreed to meet to discuss and modify the *First Plan*. *Id.* Fortner met with Plaintiff and their respective representatives on September 23, 2014, further engaged in the interactive process, and discussed modifying certain provisions in the *Plan*. *Id.* Following the September 23, 2014 meeting, Fortner sent a letter to Poston dated October 23, 2014 ("Second Plan"), memorializing the Parties' discussions, and confirming the reasonable accommodations that would be provided for the 2014-2015 school year (and future school years). *Id.,* Exhibit F.

In the *Second Plan*, Fortner specifically discussed the implementation issues that the District experienced with enlarging documents to a 14 point font size, and advised Plaintiff that she would not only be provided with a laptop with Zoomtext and access to electronic copies of documents via the shared drive or email, but that she would be provided with 11 x 17 paper and the use of the District's copiers in order ensure that she would have the opportunity to review any and all documents in an accessible format even when they were not provided in a hard copy format. *Id.,* Exhibit F; *Poston D.t.* 78. Indeed, although Plaintiff requested documents to be provided in 18 point font size, during the meeting, the Parties "acknowledged the difficulties encountered in implementing the 14 font size accommodation [during the 2013-2014 school year], which was due to a variety of factors, including, original materials coming in varied font

5

sizes and difficulty in achieving uniformity with 14 font in copying those materials; practical issues in copying materials (e.g. enlarging vs. increasing percentage to be copied and unintentionally cutting off parts of the material)."  Exhibit F.  Additionally and of great import, Fortner advised Poston that should she experience any "issues with the accommodations during this school year [2014-2015 school year] please let [him] know as soon as possible so they can be addressed."  *Id.,* Exhibit F.  Moreover, Fortner advised Poston that it was critical for her to work with District administrators "to implement these accommodations [and] have open and meaningful discussion if there are any issues or problems so they can be promptly addressed." *Id.,* Exhibit F.

By letter dated November 14, 2014, Poston responded to the *Second Plan*, and advised Fortner that she was not satisfied with everything in the *Plan* and that "one of the accommodations the district chose to change is completely unacceptable and is not an effective alternative that meets [her] needs."  *Id.*, Exhibit G.  Poston also alleged that there was "yet another incident" in which the "district failed to provide any reasonable accommodation to me" and that "[t]his therefore is another violation under the ADA for failure to provide reasonable accommodation due to [her] disability."  *Id.*, Exhibit G.  Poston further threatened to file "multiple additional charges through EEOC against the district for continued discrimination under the ADA due to [her] disability."  *Id.*, Exhibit G.

Because Poston's November 14, 2014 letter was devoid of any specific information concerning the reasonable accommodation she found to be unacceptable or the alleged incident during which the District failed to provide a reasonable accommodation to her, Fortner sent a letter to Poston dated December 1, 2014, requesting information and clarification concerning her issues.  *Id.*, Exhibit H.  Fortner specifically advised Poston that while she stated that "one of the

accommodations that the District is providing is completely unacceptable and not an effective alternative that meets your needs," she "did not identify which accommodation is of concern." *Id.*, Exhibit H.  Additionally, Fortner advised Poston that while she "stated that there was another incident between 9/23/14 and 11/14/14 of the District failing to provide an accommodation,"  she "did not identify what happened."  *Id.*, Exhibit H.  To that end, and in order to understand the issues, Fortner requested that Poston provide him with "specific information about (1) the accommodation that is completely unacceptable as an effective alternative to meet [her] needs; and (2) the incident [she] referenced between 9/23/14 and 11/14/14."  *Id.*, Exhibit H.  Fortner further advised Poston that "[o]nce [the District has] an understanding of the specifics, [the District] will be in a better position to address the situation and respond to your concerns."  *Id.*, Exhibit H.

Poston did not respond to Fortner's December 1, 2014 letter or otherwise engage in the interactive process with the Board.  *Id.*  Rather, Poston moved forward with providing information in support of a charge of discrimination she filed with the EEOC on June 30, 2014. *Id.*  In reviewing the charge, the District first learned of an alleged violation of the *Second Plan*. *Id.*  In particular, Poston alleged that she was not provided with materials in an accessible format during an in-service/training on January 16, 2015, conducted by a third-party vendor – Behr Institute.  *Id.*  Despite the terms of the *Plan* instructing Poston to let Fortner know as soon as possible if she was not provided with materials in an accessible format so the matter could promptly be addressed, Plaintiff did not advise Fortner or any other Administrator that she did not receive the materials either before, during, or after the in-service/training.  *Id.*  Nevertheless, in compliance with the *Plan*, the District obtained a copy of the materials from Behr Institute,

placed the documents on its shared drive, and notified Poston on May 11, 2015 (by email), that the documents were available for her to review.  *Id.*, Exhibit I.

Despite the Board's good faith efforts, between December 1, 2014, and August 25, 2015, Poston did not contact the District to engage in the interactive process or provide the information that he requested as outlined in the December 1, 2014 letter.  *Id.*  Moreover, Poston did not contact the District during that time to advise whether she was not provided with materials in an accessible format so the matter could promptly be addressed.  *Id.*  Rather, on August 26, 2015, Poston sent an email to Fortner stating that "since the beginning of this year [i.e., the beginning of the 2015-2016 school year], the district has failed on several occasions to honor and provide accommodations as has been requested and discussed."  *Id.*, Exhibit J.  In particular, Poston alleged that since the parties' last meeting on September 23, 2014, she had "documented approx. 18 occasions when the district has failed to honor and provide accommodations that were requested and discussed."  *Id.,* Exhibit J.  Poston further stated that she wanted to find out if Fortner thought "[the Parties] need to schedule a meeting again to review" her accommodations. *Id.*, Exhibit J.

By letter dated September 2, 2015, Fortner responded to Poston's email and noted the fact that while she stated that her requested accommodations had not been provided since the beginning of the 2015-2016 school year, she did not contact him to discuss such issues.  *Id.*, Exhibit K.  Fortner advised Poston that the District would meet with her to discuss any concerns with the list of agreed upon accommodations.  *Id.,* Exhibit K.  He further advised Poston that in order to understand her concerns, and identify possible solutions, she should "submit [her] list of concerns containing the following information:"  1) Date, time, location, and nature of the issue; 2) The corresponding number of the accommodation that was not provided from the items listed

on the October 23, 2014 agreement; and 3) The date of the meeting that [she] had with the administration to have open and meaningful conversation with to discuss the issue and the results of the meeting." *Id.*, Exhibit K.  In conclusion, Fortner advised Poston that after receiving such information, "a meeting will be scheduled to review the current issues for resolution." *Id.*, Exhibit K.  Fortner was not only concerned about the fact that Poston may not been provided with documents on various occasions during the 2014-2015 and 2015-2016 school years, but was concerned that she neglected to contact the Administration advise it that she was experiencing issues with any accommodations so that such issues could immediately be addressed as set forth in the *Second Plan*.  *Id.*

Instead of submitting a list of concerns along with the requested information, Poston filed seven (7) separate internal complaints on September 6, 2015, alleging violations that occurred in August, 2015. *Id.*, Exhibit L.  Upon receipt of Poston's internal complaints, Fortner began to investigate them, and on October 7, 2015, he hand-delivered a letter to Ms. Poston offering dates to meet to discuss his findings of the investigation.  *Id.*, Exhibit M.  On October 8, 2015, Poston responded to Fortner's letter via email and provided him with some dates she was available to meet.  *Id.*, Exhibit N.  Due to scheduling issues, the Parties met on October 20, 2015, and Fortner provided Poston with a written disposition concerning his investigation of her seven (7) internal complaints.  *Id.*, Exhibit O.

During the meeting, Poston provided Fortner with additional complaints alleging that she was not provided with documents in an accessible format on five (5) separate occasions between October 12, 2015, and October 14, 2015.  *Id.*, Exhibit P.  Prior to filing these additional complaints, Poston did not contact the Administration to advise it that she was experiencing issues with any accommodations so such issues could immediately be addressed as set forth in

the *Second Plan*.  *Id.*  To review the additional internal complaints, Fortner invited Poston to attend a meeting on November 2, 2015.  *Id.*, Exhibit Q.  After further consideration, the District decided to refer Ms. Poston's twelve (12) complaints to an outside investigator.  *Id.*

On November 4, 2015, Attorney Nicole Donovsky met with Poston to discuss the five (5) complaints she filed on October 20, 2015.  *Id.,* Exhibit R.  Although Donovsky later offered to meet with Poston concerning her initial seven (7) complaints, Ms. Poston did not accept Ms. Donovsky's invitation.  *Id.,* Exhibit R.  During the investigation, Donovsky met with other individuals, and reviewed information provided by Poston and the District (and their respective representatives).  *Id.*

Following Donovsky's initial investigation, she issued a *Memorandum* to Poston dated November 25, 2015, concerning her twelve (12) complaints.  *Id.*, Exhibit R.  Donovsky concluded that "there was not a clear and mutual understanding regarding [Poston's] specific accommodations with [Fortner], other administrative staff, or Ms. Slick [Board Legal Counsel from the Stark County Educational Service Center]."  *Id.*, Exhibit R.  Donovsky also stated that it appeared that the "last specific, mutual agreement was on February 3, 2014," and that "[t]his has resulted in documents being provided to [Ms. Poston] with a font size smaller than [her] desired 18 point font, and materials not being provided to [her] as requested."  *Id.*, Exhibit R.  Donovsky also found that in an instance where Poston claimed her laptop battery failed, she "did not consult with IT about the issue," and there was "no indication that IT support would not have been available to [Poston].  *Id.*, Exhibit R.  Donovsky further stated that due to the "apparent difference in understanding," Poston's requested remedy of holding an accommodation meeting was appropriate, and recommended that the parties memorialize "the agreed upon accommodations and a plan for addressing implementation concerns and modification."  *Id.*

10

Just five (5) days after Donovsky issued her findings, Poston filed another internal complaint dated November 30, 2015, alleging documents were not provided to her in an accessible format.  *Id.*, Exhibit S.  Donovsky reviewed and investigated Poston's additional complaint, along with the initial seven (7) complaints, and met with Poston.  *Id.*, Exhibit T. Donovsky then issued another *Memorandum* to Poston on December 16, 2015.  *Id.*, Exhibit T; *Poston D.t.* 90.

In particular, Donovsky found that while some of the documents were enlarged, certain portions of the handouts were not in 14 or 18 point font size.  *Id.*, Exhibit T.  With respect to the November 30, 2015 complaint, Donovsky found that documents were provided during an in-service conducted by teaching staff in an unmodified format.  *Id.*, Exhibit T.  Further, Donovsky concluded that "[s]ome instances where accommodations were not provided may be attributed to lack of understanding of the accommodation by the person/people responsible for providing the documentation, lack of communication, lack of time or control."  *Id.*, Exhibit T.  She also noted that "Ms. Poston did not request assistance or take any immediate action to notify administration of the failure to accommodate her until she filed her complaints," and that there "were some instances where the issue might have been readily resolved."  *Id.*, Exhibit T.

Furthermore, Donovsky reiterated, "that there is not a clear and mutual understanding regarding [Ms. Poston's] specific accommodations, with Mr. Fortner, other administrative staff, or Ms. Slick." *Id.*, Exhibit T.  She also noted that while there were instances when the 14 point font size was not provided "hopefully, issues complicating implementation of accommodations can be discussed thoroughly at an accommodation meeting."  *Id.*, Exhibit T.  Donovsky finally concluded that she maintained her prior recommendations of: "1) Holding an accommodations meeting where the requested accommodations, alternatives, complications and reasonableness

11

are discussed; 2) Memorializing the agreed upon accommodations in writing; and 3) Developing a plan for addressing implementation concerns and future requests for modifications." *Id.*, Exhibit T.

Two weeks after Donovsky's disposition, Poston filed a second charge with the EEOC on December 30, 2015, alleging she was denied a reasonable accommodation and retaliated against. On September 30, 2016, the EEOC dismissed Poston's 2014 and 2016 charges of discrimination, finding that "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." *Id.*

In the meantime, on January 6, 2016, Fortner spoke with Poston to verify whether she had received some materials for a professional development meeting that was held on January 4, 2016, in an accessible format, and discussed scheduling an accommodation meeting with Poston to review the *Accommodation Plans* and modify such *Plans*, if necessary. *Id.* Fortner attended the meetings with Poston and the Parties' respective representatives on the following dates to further engage in the interactive process, review the *Accommodation Plans,* and attempt to develop a new *Plan*: 1) January 25, 2016; 2) March 23, 2016; 3) June 28, 2016; 4) July 26, 2016; and 5) November 21, 2016. *Id.* Among other issues, the Parties discussed: 1) The previous *Plans*; 2) Poston's requests for additional accommodations: 3) The Board's need for a process to address implementation concerns to ensure that Poston would notify Fortner of any implementation issues as soon as possible so that the District could provide Poston with materials in an accessible format and any other accommodations that were not provided on an inadvertent/mistaken basis; and 4) A process for addressing future requests for modifications. *Id.* During the time period between January, 2016, and December, 2016, the Parties exchanged

various drafts of the new *Plan*.  *Id.*  The Board also met with Poston on October 26, 2016, concerning her thirteen (13) complaints during executive session.  *Id.*

Although the Parties had not reached agreement on a new *Plan*, the District, in good faith, continued to provide Poston with reasonable accommodations as set forth in the previous *Plans*, and hoped to develop a new *Plan*.  *Id.*  While the District was consistently working with Poston to develop the new comprehensive *Third Accommodation Plan*, and finalized/signed it on January 18, 2017, Poston filed a lawsuit on December 16, 2016.  *Id.*, Exhibit U.

**III.    Law and Argument**

    **A.    Standard for Summary Judgment.**

Courts grant summary judgment when the record reveals there is no "genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Lowe v. Cuyahoga Cnty./Bd. of Cnty. Comm'rs*, No. 1:08-CV-01339, 2011 U.S. Dist. LEXIS 150774, *4 (N.D. Ohio Dec. 8, 2011).  To determine if summary judgment is appropriate courts assess "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433 (6th Cir. 2005) .

Initially the burden is on the moving party to demonstrate that there is no genuine issue of material fact.  *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979) .  The court should construe all reasonable inferences in favor of the non-moving party.  *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005), citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the moving party satisfies this burden, the non-moving party must point to specific facts in the record showing a genuine triable issue.  *Williamson v. Aetna Life Ins. Co.*,

481 F.3d 369, 379-80 (6th Cir. 2007).  To show a genuine issue of material fact, the non-moving party must present evidence sufficient to support a jury verdict in its favor.

Summary judgment should be entered where a plaintiff's case is supported by a mere "scintilla" of evidence, or if his evidence is "merely colorable" or not "significantly probative." *Buckeye Union Ins. Co. v. Consol. Stores Corp.*, 587 N.E.2d 391, 393 (Ohio Ct. App. 1990). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by "showing…that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

**B.     Defendant is entitled to judgment as a matter of law with respect to Plaintiff's disability discrimination claim.**

Poston brings claims under the ADA, the Rehabilitation Act, and R.C. Chapter 4112 alleging that the Board discriminated against her by failing to provide her with a reasonable accommodation.   In the Sixth Circuit, "analysis of claims made pursuant to the [ADA] applies to claims made pursuant to Ohio Revised Code 4112.02 and the Rehabilitation Act."  *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195 (6th Cir. 2010), citing *Kleiber v. Honda of Am. Mfg*., 485 F.3d 862, 868 (6th Cir. 2007); *Doe v. Woodford Cnty. Bd. of Educ.*, 213 F. 3d 921, 925 (6th Cir. 2000) ("the Sixth Circuit discusses claims under the [ADA] and the Rehabilitation Act concurrently 'because the purpose, scope, and governing standards of the acts are largely the same, cases construing one statute are instructive in construing the other.'" (quoting, *McPherson v. Michigan High School Athletic Ass'n, Inc.*, 119 F. 3d 453, 460 (6th Cir. 1997)); *Wheat v. Columbus Bd. of Educ.*, 644 F. App'x 427 (6th Cir. 2016) ("[w]e analyze claims made pursuant to the Ohio Civil Rights Act, the Rehabilitation Act, and the ADA under a single framework").

Claims premised upon an employer's failure to provide a reasonable accommodation (as opposed to an employer's adverse employment action) "necessarily involve direct evidence (the

14

failure to accommodate) of discrimination.  Thus, if the court accepts the employee's version of the facts, no inference is required to conclude that the employee has discriminated against plaintiff." *Moscato v. Ohio State Univ.*, Ct. of Cl. No. 2011-06552, 2013-Ohio-3631, ¶ 10, citing *Kleiber* at 868.  See also, *Roebuck v. Summit Cnty. Dep't of Jobs & Family Servs.*, No. 5:13 CV 2816, 2014 U.S. Dist. LEXIS 73906, *6 (N. D. Ohio May 30, 2014). Therefore, the *McDonnell Douglas prima facie* case and burden shifting analysis does not apply in a failure to accommodate case.  *Shaver v. Wolske & Blue*, 742 N.E.2d 164, 170 (Ohio Ct. App. 2000), citing *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1283-1284 (7th Cir. 1996). Instead, in order to establish a prima facie case of disability discrimination under the ADA for failure to accommodate, a plaintiff must show that:  1) she is disabled within the meaning of the act; 2) she is otherwise qualified for the position, with or without reasonable accommodation; 3) her employer had reason to know about her disability; 4) she requested an accommodation; and 5) the employer failed to provide the necessary accommodation.  See, *Myers v. Cuyahoga Cty.,*182 F. App'x 510 (6th Cir. 2006), citing, *DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004).

There is no dispute about Plaintiff's disability (legal blindness) within the meaning of the ADA, her qualifications, or requests for an accommodation.  Rather, Plaintiff's discrimination claims fail because she is unable to demonstrate that the Board failed to provide her with a reasonable accommodation.

Reasonable accommodations include  "'making existing facilities ... readily accessible to and usable by individuals with disabilities;" and "'job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations[ .]'" *Id.*,

15

quoting 42 U.S.C. § 12111(9).  Additionally, an employer must make a reasonable effort to provide an effective accommodation, and must engage in an interactive process with the employee to identify the limitation and potential accommodations.  29 C.F.R. §1630.2(o)(3). The duty to engage in the interactive process with a disabled employee is mandatory and "requires communication and good-faith exploration of possible accommodation." *Kleiber*, 485 F.3d at 868 (internal citations omitted).  "The purpose of this process is to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'"  *Id.*, citing 29 C.F.R. §1630.2(o)(3).

Moreover, the "interactive process" generally consists of analyzing the particular job, consulting with the employee, identifying potential accommodations, and considering the employee's preference.  29 C.F.R. §1630.2(o)(3).  Considering the employee's preference, however, does not require that an employer use the employee's preferred accommodation.  The employer's obligation is to provide a reasonable and effective accommodation – not the best accommodation or the specific one requested by the employee.  See, *Hankins v. Gap, Inc.*, 84 F. 3d 797, 800 (6th Cir. 1996).  In addition an employee may not force her preferred accommodation on her employer if another reasonable accommodation is available.  *Id.*  "An employer has sufficiently acted in good faith when it readily meets with the employee, discusses any reasonable accommodations, and suggests other possible positions for the plaintiff," or other reasonable accommodations.  *Jakubowski*, 627 F.3d 195.

Here, the Board has continuously engaged in an interactive process with Plaintiff, and has developed written plans setting forth the reasonable accommodations that would be provided to Plaintiff to assist her in performing the essential functions of her job as a Teacher, including duties involving job training.  Additionally, the Board has made reasonable efforts and

endeavored in good faith to consistently provide accommodations to Poston since the time the Parties engaged in the interactive process and reached an agreement on February 3, 2014.  Such accommodations have not only been effective and reasonable, but they have been provided in accordance with the plan by the Parties, and appropriate modifications made to such plan.

### C. The Board Engaged in the Interactive Process, and Provided Plaintiff with Reasonable Accommodations in Compliance with the Accommodation Plan.

Given the numerous meetings and in-services/trainings conducted by the Board, various issues arose with the implementation of the first plan.  Indeed, in light of the sheer number of documents provided to teachers during meetings and in-services/trainings during the school year, there were some occasions when the District encountered difficulties in implementing the 14 point font size accommodation.  As stated by Fortner in his October 23, 2014 letter, "the difficulties encountered in implementing the 14 font size accommodation last year, which was due to a variety of factors, including, original materials coming in varied font sizes and difficulty in achieving uniformity with 14 font in copying those materials; practical issues in copying materials (e.g. enlarging vs. increasing percentage to be copied and unintentionally cutting off parts of the material)."  See, *Fortner Aff.*, Ex. F.  To that end, the Board worked cooperatively with Plaintiff at the beginning of the 2014-2015 school year to attempt to further address the accommodations being provided to Plaintiff, and try to identify an appropriate modification of such reasonable accommodation to address the implementation concerns.

Following the meeting, Fortner provided a written summary to Poston on October 23, 2014, clarifying the current and additional accommodations that would be provided to Plaintiff. In addition to discussing the implementation issues that the District not only experienced with enlarging documents to a 14 point font size, but would experience if it provided materials in 18 point font size (as requested by Plaintiff), Fortner advised Poston she would be provided with a

laptop with Zoomtext, access to electronic copies of documents via the shared drive or email, and access 11 x 17 paper and the use of the District's copies in order ensure that she would have the opportunity to review any and all documents in an accessible format even when they were not provided in a hard copy format.  See, Exhibit F.  Moreover, the written summary discussed the process that should be followed to address instances when Poston was not provided with accommodations, including documents in the correct font size on an inadvertent/mistaken basis. The Board believed these additional provisions were reasonable and necessary as the District was attempting to implement the accommodation plan, and wanted to address any and all issues as promptly as possible to ensure Poston would have the ability to effectively participate in any in-services/trainings and receive any and all materials as soon as possible.

Despite this process and the Board's good faith efforts, Poston refused to work with the District and notify Administrators of those instances where documents were inadvertently or mistakenly provided without large print/being enlarged.  Indeed, even after Plaintiff objected to the written summary, and Fortner asked Poston to provide him with specific information so that he could understand the issues and be in a better position to address and respond to her concerns, she did not provide him with the requested information.  Instead, Poston continued to develop a list of the dates she did not receive a handout or portion of a handout in large print, and filed several internal complaints alleging that she was being discriminated against.  In particular, despite the plan signed in February, 2014, and implementation issues discussed in Fortner's October 23, 2014 letter, Plaintiff believed she should receive documents in 18 point font size, and when she did not, Plaintiff alleged a failure to accommodate.

Nevertheless, given the Board's desire to ensure that Poston was consistently provided with reasonable accommodations, it offered to meet with Poston to engage in the interactive

process, revise the previous accommodation plans, and address specific accommodation issues and/or requests to review other reasonable accommodations in order to meet Poston's needs and the Parties' expectations. In fact, the Board and Poston met on several occasions during the 2015-2016 and 2016-2017 school years, and developed a new comprehensive Plan that was signed by the Parties on January 18, 2017. Before the new Plan was finalized, Poston filed this lawsuit in December, 2016, alleging the Board discriminated against her on the basis of her disability by failing to provide her with a reasonable accommodation.

Courts recognize that an employer will not be held liable for a breakdown in the interactive process unless the employer actually failed to provide a reasonable accommodation and is responsible for the breakdown. *Lockard v. General Motors Corp.*, 52 F. App'x 782 (6th Cir. 2002) (internal citations omitted). In this matter, reasonable accommodations have consistently been provided to Plaintiff, and the District requested specific information to continue the interactive process and address any outstanding issues, but Poston refused to provide such information. Although self-evident, it is worth noting that both the employer and the employee have an obligation not to cause a breakdown in the reasonable accommodation process either at the interactive process stage or during the implementation of the actual accommodations. An employee, however, cannot prevail in a failure to accommodate claim when the employer has been providing significant reasonable accommodations, has engaged in good faith in the interactive process, and is not promptly informed that an issue with the implementation of an accommodation plan, so any potential issue can be immediately rectified. Poston clearly believes that she is entitled to exactly what she wants and that she has no obligation to engage in open and meaningful discussions with the District to ensure that all accommodations are provided to her in accordance with the spirit and intent of the

accommodation plans developed by the Board and Poston, and in a timely manner.  The Board,

therefore, should not be found in violation of the ADA, Rehabilitation Act, or R.C. Chapter 4112

for complying with the accommodation plans, and modifications thereto, and attempting to

engage Poston in discussions to identify and implement reasonable accommodations in addition

to those already in place.

## IV.     Conclusion

For the foregoing reasons, the Court should grant Defendant's motion for summary

judgment.

Respectfully submitted,

*/s/ Sherrie C. Massey*
David K. Smith (0016208)
Sherrie C. Massey (0067471)
Smith Peters Kalail Co., L.P.A.
6480 Rockside Woods Blvd. South,
Suite 300
Cleveland, OH 44131
Telephone:  (216) 503-5055
Facsimile:  (216) 446-6032
Email:  dsmith@ohioedlaw.com
            smassey@ohioedlaw.com

*Attorneys for Defendant Massillon City
School District Board of Education*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of November 2017, a copy of the foregoing *Defendant's Motion for Summary Judgment and Memorandum in Support* was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Sherrie C. Massey*
*One of the Attorneys for Defendant Massillon*
*City School District Board of Education*

21