| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | AFFIDAVIT OF MARK FORTNER |
| COUNTY OF STARK | ) | |

Now comes, Mark Fortner, who being first duly sworn according to law deposes and states the following:

1. I, Mark Fortner, am over 18 years of age, am not under any restraint or disability, and am competent to testify to the matters stated herein.

2. I currently serve as the Assistant Superintendent of the Massillon City School District. I have held this position since August, 2007 (the beginning of the 2007-2008 school year). As part of my duties as Assistant Superintendent, I am generally responsible for directing and assigning administrators, certified/licensed employees (i.e., teachers), and classified employees (i.e., non-teachers) in the District; recommending the employment/re-employment, nonrenewal, termination, and discipline of employees, and suspension of employee contracts pursuant to a reduction-in-force to the Superintendent; assisting with the administration and planning the educational programs in the District; and performing other such duties as the Massillon City School District Board of Education ("Board" or "District") requires/determines. I am also responsible for reviewing and investigating internal claims of discrimination and harassment filed by employees in accordance with Board Policy.

3. Nicole Poston is employed by the Board in the teaching position of Intervention Specialist. She has been employed in this position since August of 2017 (since the beginning of the 2017-2018 school year). The position of Intervention Specialist is a bargaining unit position in the Negotiated Agreement between the Board and the Massillon Association ("MEA"). The MEA represents certificated/licensed employees (i.e., teachers) in the District. See, Exhibit A for a copy of the job description of Intervention Specialist.

4. Prior to the 2017-2018 school year, Ms. Poston was employed in the position of Small Group Instructor. She held this position from the time she began working in the District in August, 2002 (i.e., beginning of the 2002-2003 school year, until June, 2017 (i.e., the end of the 2016-2017 school year). The position of Small Group Instructor was a bargaining unit position in the former Negotiated Agreement between the Board and the Association of Group Teachers ("AGT"). The AGT solely represented individuals employed in the position of Small Group Instructor. See, Exhibit B for a copy of the job description of Small Group Instructor.

5. Upon the expiration of the Negotiated Agreements between the MEA and Board and AGT and Board, the parties negotiated a successor Agreement in 2017. Representation from MEA, and the AGT, including Ms. Poston, who was the

President of the AGT, participated in negotiations. The AGT petitioned the State Employment Relations Board ("SERB") to be included in the MEA. SERB granted the petition, and the members of the AGT became members of the MEA effective at the beginning of the 2017-2018 school year. Each of the Small Group Instructors bid on vacant Intervention Specialist positions, and the Board awarded such positions to former AGT members, including Ms. Poston.

6. The Board has provided Ms. Poston with reasonable accommodations since the time she began her employment in the District in August, 2002. Each of the accommodations provided to Ms. Poston between August, 2002 (i.e., since the beginning of the 2002-2003 school year) and December, 2013 (i.e., mid-2013-2014 school year) were implemented upon Ms. Poston's request to various administrators in the District, without any formal requests being submitted or the parties engaging in the interactive process. The accommodations provided to Ms. Poston were not formally documented by the Board or Ms. Poston.

7. On January 9, 2014, Ms. Poston filed an internal complaint using the Board's *Nondiscrimination and Equal Opportunity/Access Internal Complaint Form* alleging that the Building Level Administration refused to provide her with a reasonable accommodation by moving the time of a Small Group Instructor meeting being held at Massillon Intermediate School and Massillon Junior High School from 3:30-4:30 p.m. Ms. Poston served as the AGT President at the time, and the parties held a meeting on January 8, 2014, to address an unrelated labor issue. See, Exhibit C for a copy of the January 9, 2014 Complaint.

8. In response to Ms. Poston's internal complaint, the School Board's then-attorney and I met with Ms. Poston and her attorney on a few occasions between January 9, 2014, and February 3, 2014, to discuss the complaint, review all past, current, and potential additional reasonable accommodations provided to Ms. Poston by the Board, and to engage in the interactive process. Poston provided the Board with written certification from her physician stating that she was legally blind.

9. As a part of the interactive process and review of accommodations, the Board and Ms. Poston signed a letter dated February 3, 2014, memorializing the reasonable accommodations that would be provided to Ms. Poston for the 2013-2014 school year and future years. See, Exhibit D for a copy of the February 3, 2014 letter ("First Accommodation Plan"). In relevant part, the *First Accommodation Plan* stated as follows:

   a. *Large screen computer monitor - the District currently provides a large screen computer monitor for Ms. Poston and will continue to do so.*

   b. *Zoomtext - the District currently provides this software for Ms. Poston's computer and will continue to do so.*

    c. *IT in-service and in-service involving IT - the District has provided and will continue to provide Ms. Poston a large computer monitor with Zoomtext or another computer with similar modifications for Ms. Poston to actively participate in said in-services and trainings. If the District is unable to provide the computer access during said IT in-service or in-service involving IT, the District will schedule later in-service/ training for Ms. Poston on either her computer with large monitor or Zoomtext or a similar modified computer system.*

    d. *IT Priority Status- the District has provided and will continue to have its IT Department place Ms. Poston on priority status for issues related to Ms. Poston's computer system.*

    e. *Based on Ms. Poston's documented disability and the accommodations provided, the District suggested exploring a reasonable accommodation of providing Ms. Poston copies of in-service or staff meeting materials in a certain format.*

        i. *Through the informal interactive process, this requested accommodation was more fully explored. The parties recognized the difficulty Ms. Poston has in actively participating in training or in-services that do not involve IT or computer-related training when printed materials are used. Ms. Poston explained she has an easier time reading font that is 14 font size or greater when printed materials are used.*

        ii. *For the 2013-2014 school year, the District will either provide Ms. Poston copies of in-service or training materials in 14 font size or more at in-services or trainings or by email in advance of such meetings.*

    f. *The parties reviewed which administrators should receive notification of these accommodations and agreed they should include: the Superintendent, Assistant Superintendent, Director of Pupil Services, ADA Compliance Coordinator, Director of Curriculum, Director of Technology, Building Principal, and Assistant Building Principals.*

    g. *In the future, should there be a need to review any of these accommodations or potential other accommodations, please contact me to set up another interactive process meeting so we can explore the matter.* See, Exhibit D.

10. Following the execution of the *First Accommodation Plan*, I promptly notified the administrators (identified in the *Plan*) of Ms. Poston's need for reasonable accommodation, and provided each of them with a copy of the letter. See, Exhibit E for a copy of the e-mail dated February 6, 2014.

11. Although the Board attempted to comply with the terms with the *First Accommodation Plan*, there were times during the remainder of the 2013-2014 school year when outside presenters did not initially provide materials in an accessible format. The District, however, obtained those materials from the presenters and provided them to Ms. Poston in an accessible format. Additionally, in May, 2014, the District did not provide Ms. Poston with a document in an accessible format prior to a scheduled in-service/training. The District, however, enlarged the materials and provided a copy of the materials to Ms. Poston in an accessible format during the in-service/training.

12. Given that various issues had arisen with the implementation of the *First Accommodation Plan*, including the fact that that District found that it was very difficult to enlarge each handout to a 14 point font size for in-services/trainings, the Parties agreed to meet to discuss and modify the *First Accommodation Plan*. I met with Ms. Poston and our respective representatives on September 23, 2014, and we further engaged in the interactive process and discussed modifying certain provisions in the *First Accommodation Plan*.

13. Following the September 23, 2014 meeting, I sent a letter to Ms. Poston dated October 23, 2014, memorializing our discussions during the meeting, and confirming the reasonable accommodations that would be put in place for the 2014-2015 school year (and future school years). See, Exhibit F for a copy of the October 23, 2014 letter ("Second Accommodation Plan"). In relevant part, the *Second Accommodation Plan* stated as follows:

    a. *The District will continue to provide you a large screen computer monitor at your desk.*

    b. *The District will replace your desktop computer and replace it with a laptop with a screen size of at least 15 inches. The Zoomtext software on your desktop will be transferred onto the laptop. The laptop will be able to connect to the large screen computer monitor on your desk and you will be provided a mouse to connect to your laptop as well.*

    c. *IT Priority Status - you have a priority status for requests made to the IT Department related to your computer system.*

    d. *For In-Services and Staff Meetings- the laptop issued to you is to be used by you so you can view any presentations or handouts in electronic format on your laptop using Zoomtext. The District will make best efforts to provide you an electronic copy of presentations/handouts via its shared drive or by email prior to the scheduled meeting.*

    e. *Paper - the District provided you 11x17 paper in the event you need to make larger print copies of documents for inservices. Should you need additional paper, please contact me.*

    *f. At our meeting, the prior accommodation for providing printed materials in specific font size was discussed. Based on that discussion, the District understands that materials sent to your home should be of the same font size as sent to other recipients as you have equipment at home allowing you to view those items appropriately.*

    *g. You requested the 14 font size be increased to 18 font in printed materials administrators provide you at school. We all acknowledged the difficulties encountered in implementing the 14 font size accommodation last year, which was due to a variety of factors, including, original materials coming in varied font sizes and difficulty in achieving uniformity with 14 font in copying those materials; practical issues in copying materials (e.g. enlarging vs. increasing percentage to be copied and unintentionally cutting off parts of the material). By providing the laptop with Zoomtext software and access to electronic copies of documents via the shared drive or email, we anticipate you will be able to view all materials. We anticipate this should better address the situation and result in minimal need for printed materials. For those few occasions, the District has provided you with 11 x 17 paper and use of the copier to make printed copies you need.*

14. In the *Second Accommodation Plan*, I discussed the implementation issues that the District experienced with enlarging documents to a 14 point font size, and advised Ms. Poston that she would not only be provided with a laptop with Zoomtext, but that she would be provided with 11 x 17 paper and the use of the District's copies in order ensure that she would have the opportunity to review any and all documents in an accessible format even when they were not provided in a hard copy format. See, Exhibit F.

15. Additionally, in the *Second Accommodation Plan*, I advised Ms. Poston that should she experience any "issues with the accommodations during this school year [2014-2015 school year] please let me know as soon as possible so they can be addressed." See, Exhibit F. I further advised Ms. Poston that it was critical for her to work with District administrators "to implement these accommodations [and] have open and meaningful discussion if there are any issues or problems so they can be promptly addressed." See, Exhibit F.

16. The District and I believed that these additional provisions were necessary as the District was attempting to implement the accommodation plans in good faith, and wanted to address any and all issues as promptly as possible to ensure Ms. Poston would have the ability to effectively participate in any in-services/trainings and receive any and all materials as soon as possible if the District or outside presenter did not provide Ms. Poston with a copy of such materials on an inadvertent/mistaken basis. See, Exhibit F. Unfortunately, instead of immediately notifying the District of such mistakes, Ms. Poston would wait a significant amount of time, and then allege that the District violated the terms of

the accommodation plan rather than providing it with the opportunity to immediately take corrective action. See, Exhibit F.

17. By letter dated November 14, 2014, Ms. Poston responded to the *Second Accommodation Plan*, and advised me that she was not satisfied with everything in the *Plan* and that "one of the accommodations the district chose to change is completely unacceptable and is not an effective alternative that meets [her] needs." See, Exhibit G for Ms. Poston's letter dated November 14, 2014. Ms. Poston also alleged that there was "yet another incident" in which the "district failed to provide any reasonable accommodation to me" and that "[t]his therefore is another violation under the ADA for failure to provide reasonable accommodation due to my disability." See, Exhibit G. Ms. Poston further threatened to file "multiple additional charges through EEOC against the district for continued discrimination under the ADA due to my disability." See, Exhibit G.

18. Given that Ms. Poston's November 14, 2014 letter was devoid of any specific information concerning the reasonable accommodation she found to be unacceptable or the alleged incident during which the District failed to provide a reasonable accommodation to her, I sent a letter to Ms. Poston dated December 1, 2014, requesting information and clarification concerning her issues. See, Exhibit H for a copy of the letter dated December 1, 2014. In particular, I advised Ms. Poston that while she stated that "one of the accommodations that the District is providing is completely unacceptable and not an effective alternative that meets your needs," she "did not identify which accommodation is of concern." See, Exhibit H. Additionally, I advised Ms. Poston that while she "stated that there was another incident between 9/23/14 and 11/14/14 of the District failing to provide an accommodation," she "did not identify what happened." See, Exhibit H. To that end, and in order to understand the issues, I asked Ms. Poston to provide me with "specific information about (1) the accommodation that is completely unacceptable as an effective alternative to meet your needs; and (2) the incident you referenced between 9/23/14 and 11/14/14." See, Exhibit H. I further advised Ms. Poston that "[o]nce we have an understanding of the specifics, we will be in a better position to address the situation and respond to your concerns." See, Exhibit H.

19. Ms. Poston did not respond to my December 1, 2014 letter or otherwise engage in the interactive process with the Board. Rather, Ms. Poston moved forward with providing information in support of a charge of discrimination she filed with the EEOC on June 30, 2014. Although the Board received a *Notice of Charge of Discrimination* from the EEOC dated June 30, 2014, Box number 1 was checked which states "No action required by you at this time."

    a. The EEOC finally sent a copy of the completed *Notice of Charge of Discrimination*, including Ms. Poston's allegations, on March 18, 2015 ("2014 Charge of Discrimination").

  b. On May 11, 2015, the Board filed a position statement and related documentation.

  c. On September 23, 2016, the EEOC issued a *Dismissal and Notice of Rights* dismissing Ms. Poston's 2014 Charge of Discrimination. The EEOC determined that the "evidence fails to support that [Ms. Poston] was discriminated against as alleged." On the *Dismissal and Notice of Rights* form, the EEOC indicated that "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised in this charge."

20. Of great import is that the District first learned of an alleged violation of the *Second Accommodation Plan* when it reviewed Ms. Poston's *2014 Charge of Discrimination*. In particular, Ms. Poston alleged that she was not provided with materials in an accessible format during an in-service/training on January 16, 2015, conducted by a third-party vendor – Behr Institute. Despite the terms of the *Second Accommodation Plan* instructing Ms. Poston to let me know as soon as possible if she was not provided with materials in an accessible format so the matter could promptly be addressed, Ms. Poston did not advise me or any other District administrator that she did not receive the materials either before, during, or after the in-service/training. After reviewing the *2014 Charge of Discrimination*, the District obtained a copy of the materials from Behr Institute, placed the documents on its shared drive, and notified Ms. Poston on May 11, 2015 (by email), that the documents were available for her to review. See, Exhibit I for a copy of the email sent to Ms. Poston on May 11, 2015.

21. Between December 1, 2014, and August 25, 2015, Ms. Poston did not contact me to engage in the interactive process or provide the information that I requested as outlined in my December 1, 2014 letter.

22. Moreover, Ms. Poston did not contact me or any other District administrator (to my knowledge) between December 1, 2014, and August 25, 2015, to advise the District whether she was not provided with materials in an accessible format so the matter could promptly be addressed. Rather, on August 26, 2015, Ms. Poston sent an email to me stating that "since the beginning of this year [i.e., the beginning of the 2015-2016 school year], the district has failed on several occasions to honor and provide accommodations as has been requested and discussed." See, Exhibit J for a copy of Ms. Poston's email dated August 26, 2015. In particular, Ms. Poston alleged that since the parties' last meeting on September 23, 2014, she had "documented approx. 18 occasions when the district has failed to honor and provide accommodations that were requested and discussed." See, Exhibit J. Ms. Poston further stated that she wanted to find out

        if I thought "we need to schedule a meeting again to review" her accommodations. See, Exhibit J.

23. By letter dated September 2, 2015, I responded to Ms. Poston's email and noted the fact that while she stated that her requested accommodations had not been provided since the beginning of the 2015-2016 school year, she did not contact me to discuss such issues. See, Exhibit K for a copy of the September 2, 2015 letter sent to Ms. Poston. I advised Ms. Poston that the District Administration would meet with her to discuss any concerns with the list of agreed upon accommodations. See, Exhibit K. I further advised Ms. Poston that in order to understand her concerns, and identify possible solutions, she should "submit [her] list of concerns containing the following information:" • Date, time, location, and nature of the issue; • The corresponding number of the accommodation that was not provided from the items listed on the October 23, 2014 agreement; and • The date of the meeting that you had with the administration to have open and meaningful conversation with to discuss the issue and the results of the meeting." See, Exhibit K. I finally advised Ms. Poston that after receiving such information, "a meeting will be scheduled to review the current issues for resolution." See, Exhibit K. I was not only concerned about the fact that Ms. Poston may not been provided with documents on various occasions during the 2014-2015 and 2015-2016 school years, but was concerned that she neglected to contact me or any other Administrator (to my knowledge) to advise the District that she was experiencing issues with any accommodations so that such issues could immediately be addressed as set forth in the *Second Accommodation Plan*.

24. Instead of submitting a list of concerns along with the requested information, Ms. Poston filed seven (7) separate internal complaints on September 6, 2015, using the Board's *Nondiscrimination and Equal Opportunity/Access Internal Complaint Form*. See, Exhibit L for Ms. Poston's seven (7) internal complaints.

    a. In her complaints, Ms. Poston alleged that the District failed to provide her with materials in an accessible format on the following occasions: 1) August 18, 2015, during a Special Ed meeting following Convocation; 2) August 18, 2015, during a building-wide staff meeting at Massillon Junior High School; 3) August 19, 2015, during a professional development session; 4) August 19, 2015, during a professional development session; 5) August 19, 2015, during a professional development session; 6) August 20, 2015, when forms were placed in her mailbox that she needed to complete/fill out; 7) August 31, 2015, when the District's *Staff Education Technology Acceptable Use and Safety Agreement* was placed in her mailbox. See, Exhibit L.

    b. In each of the complaints, Ms. Poston requested relief in the form of an accommodation meeting with the Administration, and a meeting with the Board to discuss her complaints. See, Exhibit L.

25. Upon receipt of Ms. Poston's internal complaints, I began to investigate them. On October 7, 2015, I hand-delivered a letter to Ms. Poston offering dates to meet to discuss my findings of the investigation of the seven (7) complaints. See, Exhibit M for a copy of the letter to Ms. Poston dated October 7, 2015. On October 8, 2015, Ms. Poston responded to my letter via email and provided me with some dates she was available to meet with me. See, Exhibit N for a copy of Ms. Poston's email dated October 8, 2015.

26. Due to scheduling issues, the Parties met on October 20, 2015. I attended the meeting, along with Ms. Poston, and our respective representatives. I provided Ms. Poston with a written disposition concerning my investigation of her seven (7) internal complaints. See, Exhibit O for a copy of the Memorandum dated October 20, 2015.

    a. During my investigation, I spoke with various Administrators and found that two PowerPoint presentations were not made available prior to meeting on August 19, 2015, and two forms placed in Ms. Poston's mailbox by support staff were not in a 14 point font size on August 20, 2015 and August 30, 2015. See, Exhibit O.

    b. I verified, however, that the remaining documents were provided to Ms. Poston in an accessible format and in one case, there was no material distributed to the attendees: 1) August 18, 2015, during a Special Ed meeting following Convocation – Administrator stated that IEP checklist was provided in an accessible format; 2) August 18, 2015, during a building-wide staff meeting at Massillon Junior High School – Administrator stated that handout was provided in an accessible format and presentation was available during and after the meeting; 3) August 19, 2015, during a professional development session – Administrator stated that handout was provided in an accessible format; 4) August 19, 2015, during a professional development session – Administrator stated that handout was provided in an accessible format; and 5) August 19, 2015, during a professional development session – there were no handouts and items were written on Large Poster Paper. See, Exhibit O.

27. During the meeting on October 20, 2015, Ms. Poston provided me with five (5) additional complaints alleging that she was not provided with documents in an accessible format on five (5) separate occasions between October 12, 2015, and October 14, 2015. See, Exhibit P for a copy of Ms. Poston's five (5) internal complaints. Prior to filing these additional complaints, Ms. Poston did not contact me or any other Administrator (to my knowledge) to advise the District that she was experiencing issues with any accommodations so such issues could immediately be addressed as set forth in the *Second Accommodation Plan*. By letter dated October 23, 2015, I invited Ms. Poston to attend a meeting on November 2, 2015, to review the additional internal complaints she had filed. See, Exhibit Q for the October 23, 2015 letter.

28. After discussing the matter further with Superintendent Richard Goodright, the Board decided to refer Ms. Poston's twelve (12) complaints to an outside investigator. On November 4, 2015, Attorney Nicole Donovsky met with Ms. Poston to discuss the five (5) complaints she filed on October 20, 2015. Although Ms. Donovsky later offered to meet with Ms. Poston concerning her initial seven (7) complaints, Ms. Poston did not accept Ms. Donovsky's invitation. See, Exhibit R for a copy of the Memorandum issued by Nicole Donovsky to Ms. Poston dated November 25, 2015. During the investigation, Ms. Donovsky met with other individuals, and reviewed information provided by Ms. Poston and the District (and their respective representatives).

29. Following Ms. Donovsky's initial investigation, she issued a Memorandum ("First Complaint Memorandum") to Ms. Poston dated November 25, 2015, concerning her twelve (12) complaints. See, Exhibit R. Ms. Donovsky concluded that "there was not a clear and mutual understanding regarding [Ms. Poston's] specific accommodations with Mr. Fortner, other administrative staff, or Ms. Slick [Board Legal Counsel from the Stark County Educational Service Center]." See, Exhibit R. In the *First Complaint Memorandum*, Ms. Donovsky also stated that it appeared that the "last specific, mutual agreement was on February 3, 2014," and that "[t]his has resulted in documents being provided to [Ms. Poston] with a font size smaller than [her] desired 18 point font, and materials not being provided to [her] as requested." Ms. Donovsky also found that in an instance where Ms. Poston claimed her laptop battery failed, she "did not consult with IT about the issue," and there was "no indication that IT support would not have been available to [Ms. Poston]. Ms. Donovsky further stated in the *First Complaint Memorandum* that due to the "apparent difference in understanding," Ms. Poston's requested remedy of holding an accommodation meeting was appropriate, and recommended that the parties memorialize "the agreed upon accommodations and a plan for addressing implementation concerns and modification." See, Exhibit R.

30. Five (5) days after Ms. Donovsky issued the *First Complaint Memorandum*, Ms. Poston filed another internal complaint dated November 30, 2015, using the Board's *Nondiscrimination and Equal Opportunity/Access Internal Complaint Form*, alleging documents were not provided to her in an accessible format. See, Exhibit S for Ms. Poston's November 30, 2015 Complaint.

31. Ms. Donovsky reviewed and investigated Ms. Poston's initial seven (7) complaints, along with complaint number thirteen (13) that she filed on November 30, 2015, and met with Ms. Poston to discuss such complaints. Following her investigation, Ms. Donovsky issued a Memorandum ("Second Complaint Memorandum") to Ms. Poston on December 16, 2015. See, Exhibit T for Ms. Donovsky's Memorandum.

    a. In reviewing Ms. Poston's original seven (7) complaints confirmed Mr. Fortner's previous findings, but found that one document was provided in an

      unmodified format. See, Exhibit T. She also found that while some of the documents were enlarged, certain portions of the handouts were not in 14 or 18 point font size. See, Exhibit T.

   b. With respect to the November 30, 2015 complaint, Ms. Donovsky found that documents were provided during an in-service conducted by teaching staff in an unmodified format. See, Exhibit T.

   c. In the *Second Complaint Memorandum*, Ms. Donovsky concluded that "[s]ome instances where accommodations were not provided may be attributed to lack of understanding of the accommodation by the person/people responsible for providing the documentation, lack of communication, lack of time or control." See, Exhibit T.

   d. Ms. Donovsky also noted that "Ms. Poston did not request assistance or take any immediate action to notify administration of the failure to accommodate her until she filed her complaints," and that there "were some instances where the issue might have been readily resolved." See, Exhibit T.

   e. In the *Second Complaint Memorandum*, Ms. Donovsky also concluded, as stated in her prior decision, "that there is not a clear and mutual understanding regarding [Ms. Poston's] specific accommodations, with Mr. Fortner, other administrative staff, or Ms. Slick." See, Exhibit T. She also noted, that while there were instances when the 14 point font size was not provided "[hopefully, issues complicating implementation of accommodations can be discussed thoroughly at an accommodation meeting." See, Exhibit T.

   f. Ms. Donovsky further concluded that she maintained her prior recommendations of: "1) Holding an accommodations meeting where the requested accommodations, alternatives, complications and reasonableness are discussed; 2) Memorializing the agreed upon accommodations in writing; and 3) Developing a plan for addressing implementation concerns and future requests for modifications." See, Exhibit T.

32. Following the issuance of the *Second Complaint Memorandum*, Ms. Poston filed a charge of discrimination with the EEOC on December 30, 2015, alleging she was denied a reasonable accommodation and retaliated against for filing her previous charge of discrimination on June 30, 2014.

   a. On February 24, 2016, the Board filed a position statement and related documentation.

   b. On September 23, 2016, the EEOC issued a second *Dismissal and Notice of Rights* dismissing Ms. Poston's 2016 Charge of Discrimination. The EEOC determined that the "evidence fails to support that [Ms. Poston] was discriminated against as alleged." On the *Dismissal and Notice of Rights*

form, the EEOC indicated that "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised in this charge."

33. On January 6, 2016, I spoke with Ms. Poston to verify whether she had received some materials for a professional development meeting that was held on January 4, 2016, in an accessible format. I had instructed the employees to enlarge the documents to ensure that they were in large font. I also discussed scheduling an accommodation meeting with Ms. Poston to review the *Accommodation Plans* and modify such *Plans*, if necessary.

34. I attended accommodation meetings with Ms. Poston and our respective representatives on several occasions on the following dates to further engage in the interactive process, review the *Accommodation Plans*, and attempt to develop a new *Plan*: 1) January 25, 2016; 2) March 23, 2016; 3) June 28, 2016; 4) July 26, 2016; and 5) November 21, 2016. The Board also met with Ms. Poston on October 26, 2016, concerning her thirteen (13) complaints during executive session.

35. During each accommodation meeting, among other issues, the Parties discussed: 1) The previous *Accommodation Plans*; 2) Ms. Poston's requests for additional accommodations: 3) The Board's need for a process to address implementation concerns to ensure that Ms. Poston would notify me of any implementation issues as soon as possible so that the District could provide Ms. Poston with materials in an accessible format and any other accommodations that were not provided on an inadvertent/mistaken basis; and 4) A process for addressing future requests for modifications. During the time period between January, 2016, and December, 2016, the Parties exchanged various drafts of the new *Plan* to one another.

36. Although the Parties had not reached agreement on a new *Plan*, the District, in good faith, continued to provide Ms. Poston with reasonable accommodations as set forth in the *First Accommodation Plan* and *Second Accommodation Plan*, and hoped to develop a new *Plan*.

37. While the Board was consistently working with Ms. Poston to develop the new comprehensive *Plan*, and finalized/signed it on January 18, 2017 ("Third Accommodation Plan"), Ms. Poston filed a lawsuit on December 16, 2016. See, Exhibit U for a copy of the *Third Accommodation Plan* dated January 18, 2017.

38. I have never discriminated against Ms. Poston on the basis of her disability, or any other prohibited factor. During my employment with the Board, I have taken employment actions and have made employment recommendations to the Superintendent concerning personnel matters. In each instance, my decision to take employment actions and/or make employment recommendations has been

guided by my understanding of the provisions of the relevant collective bargaining agreements, Board Policy, and state and federal law, and has been made without regard to disability, sex, gender, race, age or any other discriminatory factor. Also, I have never denied Ms. Poston a reasonable accommodation, but have attempted, in good faith, to comply with the terms of the *Accommodation Plans*, provide Ms. Poston with reasonable accommodations, and engage in the interactive process and other discussions with Ms. Poston to identify and implement, if possible, reasonable accommodations in addition to those already in place.

39. Further, to my knowledge, neither the Board nor any of its administrators/employees have discriminated against Ms. Poston or denied her a reasonable accommodation. The Board and its administrators/employees, have attempted, in good faith, to comply with the terms of the *Accommodation Plans,* provide Ms. Poston with reasonable accommodations, and work with Ms. Poston to identify and implement, if possible, reasonable accommodations during her employment in the District.

40. Throughout Ms. Poston's employment she has consistently received positive evaluations. See, Exhibit V for Ms. Poston's evaluations. For example, during the 2014-205 School Year, Ms. Poston's Final Summative (Overall) Rating was Accomplished which is the highest rating a teacher can receive. See, Exhibit V.

41. The Exhibits referenced herein are true and accurate copies of records maintained by the Massillon City School District Board of Education.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Mark Fortner
Assistant Superintendent

Sworn to before me and subscribed in my presence on this ___17th___ day of November, 2017.

Susan A. Hutkowski
Notary Public, State of Ohio
My Commission Expires 06-04-2018