IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **NICOLE POSTON,** | Case No. 5:15-cv-03013-SL |
| **Plaintiff,** | JUDGE SARA LIOI |
| v. | |
| **MASSILLON CITY SCHOOLS,** | |
| **Defendant,** | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, by and through Counsel, hereby submits her brief in opposition to Defendant's Motion for Summary Judgment. For the reasons set forth in the attached memorandum of law and supporting exhibits, the motion should be denied because genuine issues of material fact exist and Defendant is not entitled to judgment as a matter of law.

Respectfully submitted,

/s/ Emily C. White
Emily White (0085662)
Marc E. Dann (0039425)
DANNLAW
P.O. Box 6031040
Cleveland, Ohio 44103
Telephone: (216) 373-0539
Facsimile: (216)373-0536
*notices@dannlaw.com*
*Counsel for Plaintiff*

1

# **TABLE OF CONTENTS**

TABLE OF CONTENTS 2
TABLE OF AUTHORITIES 3
STATEMENT OF THE CASE 4
STATEMENT OF THE FACTS 5
STANDARD OF REVIEW 7
LAW AND ARGUMENT 8

    A. There is a genuine issue of material fact whether Massillon has discriminated against Ms. Poston by failing to provide reasonable and effective accommodations

    B. Massillon has not demonstrated that it actually provided effective accommodations, or that its failure to do so was attributable to Ms. Poston

CONCLUSION 18
CERTIFICATE OF SERVICE 19

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986)* 8

*Baynes v. Cleland,* 799 F.3d 600, 606 (6th Cir. 2015) 8

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) 8

*DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004) 9

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d. 344, 349 (6th Cir. 1998) 8

*Fleetwood v. Harford Sys. Inc*., 380 F. Supp. 2d 688, 699 (D. Md. 2005) 10

*Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994) 8

**Rules**

29 C.F.R. § 1630.4(a)(vii) 8

29 U.S.C. § 794(a) and (b)(2)(B) 9

42 U.S.C. § 12111(9) 10

42 U.S.C. § 12112 (A) 8

42 U.S.C. § 12112(B) 9

504.29 U.S.C. § 794(d) 9

Fed. R. Civ. P. 56(a) 8

O.R.C. § 4112 9

**Other Authorities**

U.S. Equal Employment Opportunity Commission, Enforcement Guidance 10

## STATEMENT OF THE CASE

In this disability discrimination suit, Plaintiff Nicole Poston, a visually impaired teacher employed by Massillon City Schools (Massillon), asserts that her employer has discriminated against her by failing to provide effective disability related accommodations.  Specifically, Ms. Poston asserts that throughout the past three years, Massillon has failed on dozens of occasions to ensure that written materials are furnished to her in an accessible large print format so that she can effectively participate in and benefit from staff meetings and trainings to the same degree as her colleagues without disabilities.

Massillon filed a motion for summary judgment arguing that it has provided reasonable accommodations, and that any failure to provide accommodations was excused by Ms. Poston's alleged failure to promptly notify Massillon following each instance in which accommodations were not provided, and also that Massillon had fulfilled its obligations to provide accommodations by engaging in meetings about accommodations.  As discussed in greater detail below, these assertions are contradicted by the record and mis-state Defendant's obligations under the law.

Summary judgment must be denied because there is a genuine dispute of material fact regarding whether or not Massillon actually complied with its duty to provide effective disability related accommodations to Ms. Poston.  Ms. Poston has submitted a detailed affidavit and supporting exhibits documenting dozens of instances when written materials were not provided in an accessible format, and describing her fruitless efforts over three years to persuade Massillon to restore the effective accommodations it had previously provided to her without issue for more than a decade.  Viewing the evidence in the light most favorable to Ms. Poston, a reasonable trier of fact could conclude that Massillon discriminated against Ms. Poston.

**STATEMENT OF FACTS**

The following facts are undisputed, except where noted. Nicole Poston is a visually impaired teacher, who has been employed by the Massillon City Schools since 2002. Due to her vision impairment, Ms. Poston requires printed materials to be provided in an enlarged format. (Poston Aff. ¶ 3.)  Ms. Poston uses assistive technology, including the magnification software Zoomtext to enlarge and access printed materials on a screen. (Poston Aff. ¶ 4.) However, because it is not possible to enlarge more than one document at a time, assistive technology is not effective for Ms. Poston to view lengthy documents or compare two different documents at a time.  (Poston Aff. ¶ 4; Poston Dep. 123:6-25.) Ms. Poston's disability related limitations on seeing and reading print material are obvious and have been known to Massillon since the commencement of Ms. Poston's employment.  (Poston Aff. ¶¶ 2, 5, 7, 8.)

Massillon requires its employees to attend regular staff meetings and trainings on education topics. (Poston Aff. ¶ 6.) These presentations typically involve a powerpoint presentation and printed materials provided as handouts. (Poston Aff. ¶ 6.) Some included presentations by outside speakers invited or hired by Massillon, others include presentations by Massillon staff or administrators. (Poston Aff. ¶ 6.) Most presentations include contemporaneous group discussions of the information presented in handouts or on powerpoint presentations, which requires viewing more than one document at a time.  (Poston Dep. 123:6-25. (estimating that seventy five percent of trainings and meetings involve viewing more than one document at once.)

From 2002 through 2013, Massillon provided reasonable accommodations to Ms. Poston. Written materials were consistently provided in large print. (Poston Aff. ¶ 8.)  For staff trainings, powerpoint presentations were typically provided electronically in advance, for Ms. Poston to

review with magnification software, and handouts used at trainings were provided in large print. (Poston Dep. 123:16-25.) Although there were some occasions in which handouts were either not provided, or some materials were not accessible, these instances were rare, less than one percent of the time in Ms. Poston's estimation. (Poston Dep. at 49:1-9.) On the rare occasions that materials were not provided in an accessible format, Ms. Poston followed up with the training provider to obtain the materials. (Poston Dep. at 49:10-19.) These accommodations were effective, because they allowed Ms. Poston to fully participate in trainings. (Poston Dep. 122:22-123:25.) In addition to accommodations for printed materials, Massillon made other disability related accommodations that are not directly related to the accommodations currently at issue, including adjusting meeting times, providing additional time and materials to copy and enlarge instructional materials, and providing some assistive technology to magnify printed materials. Although these accommodations were never memorialized in any written plan, Massillon took steps to ensure that they were implemented. (Poston Aff. ¶ 8.) From 2002 through 2013, Massillon did not deny any of Ms. Poston's requests for accommodations, nor did Massillon indicate that the accommodations were difficult to provide or posed an undue burden. (Poston Aff. ¶ 9.)

Since 2014, and continuing to the present, Massillon has failed to consistently provide Ms. Poston with accessible printed materials, presentations, and handouts at staff meetings, trainings, and in other communications. (Poston Aff. ¶¶ 15 (March 18, 2014), 16 (May 23, 2014), 19 (September 24, 2014), 21 (October 22, 2014), 25 (December 11, 2014), 26 (January 7, 2015), 27 (January 13, 2015), 28 (January 16, 2015), 29 (January 21, 2015), 30 (March 25, 2015), 31 (April 29, 2015), 32 (July 13, 2015), 33 (August 18 and 19, 2015), 34 (August 21 and 30, 2015),  42 (October 12, 2015), 43 (October 14, 2015), 47 (October 22, 2015), 48 (November 18, 2015), 52 (December 15, 2015), 56 (March 16, 2016), 59 (April 20, 2016), 60 (May 19, 2016), 63 (August

6

19, 2016), 67 (April 19, 2017), 68 (May 30, 2017), 69 (September 1, 2017), 70 (September 21, 2017), 71 (October 5, 2017), 72 (November 15, 2017). ) As a result, Ms. Poston has been denied the opportunity to participate in critical meetings and trainings to the same extent as her peers without disabilities. Many trainings were on important topics such as compliance with special education rules, policies regarding assessments and documentation of student learning objectives. (Poston Aff. ¶ 6.) Many of the meetings and trainings featured group breakout sessions to review inaccessible handouts, or discussions about inaccessible video or powerpoint presentations. (*See, e.g.* Poston Dep. 115:18-116:14.) Some of the inaccessible materials were provided by outside speakers, but others were produced by peers and colleagues who apparently had not been made aware by Massillon of Ms. Poston's need for accommodations. (*See e.g.* Poston Dep. 120:6-13 (testifying that a principal was the presenter at a meeting featuring inaccessible printed materials).)

Ms. Poston's requests for accommodations and complaints about inaccessible materials have been met with demands for documentation and numerous meetings. (*See e.g.*, Poston Aff. ¶ 36, 51, 54.) These efforts have yielded three written accommodations plans, most recently in June, but Massillon has continued to fail to consistently provide written materials in an accessible format.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the Court must view all facts and reasonable inferences from those facts in the light most favorable to the non-moving party. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d. 344, 349 (6th

Cir. 1998). Summary judgment must be denied if genuine issues of material fact remain for trial. *Id.* On the other hand, if a reasonable jury could return a verdict for the nonmoving party, summary judgment for the moving party is inappropriate. *Baynes v. Cleland,* 799 F.3d 600, 606 (6th Cir. 2015). The movant bears the initial burden of showing that there is no material issue in dispute. *Id.* at 607 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A fact is deemed material only if it might affect the outcome of the case under the governing substantive law. *Id.* (citing *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994), in turn citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 247-48 (1986)).

## LAW AND ARGUMENT

Massillon's motion for summary judgment must be denied because there is a genuine issue of material fact whether Massillon has discriminated against Ms. Poston by failing to provide documents and training materials in an accessible format, particularly at staff meetings and trainings, in violation of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Ohio's Fair Employment Practices Act.

**A.** **There is a genuine issue of material fact whether Massillon has discriminated against Ms. Poston by failing to provide reasonable and effective accommodations**

Title I of the Americans with Disabilities Act prohibits an employer from discriminating against otherwise qualified employees in job training and other terms and conditions of employment. 42 U.S.C. § 12112 (A); *see also* 29 C.F.R. § 1630.4(a)(vii) (prohibiting discrimination in "selection and financial support for training, including: apprenticeships, professional meetings, conferences and other related activities"). Discrimination includes failure to make reasonable accommodations for an employee's known disability related limitations, either directly, or by contractual relationship or arrangement. 42 U.S.C. § 12112(B). Section 504 of the

8

Rehabilitation Act prohibits discrimination against otherwise qualified individuals with disabilities by any program or activity receiving federal funds, including a "local educational agency" such as Defendant. 29 U.S.C. § 794(a) and (b)(2)(B).  The standard set forth in Title I of the ADA applies in determining whether a program or activity receiving federal funds has discriminated in employment under Section 504.29 U.S.C. § 794(d), and Ohio's R.C. § 4112 *et al.*

In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show (a) that the employer is subject to the ADA; (b) that the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (c) that the plaintiff was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (d) that the employee has requested an accommodation; and (e) that the employer failed to provide the necessary accommodation.  *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004).

Here, there is no dispute that the first three factors are met in this case: Massillon is an employer subject to the ADA, Ms. Poston is a qualified individual with a disability who has a substantial functional limitation in the major life activity of seeing, and Ms. Poston is able to perform the essential functions of her job with accommodations.  There is also no genuine dispute that due to her visual impairment, Ms. Poston needs printed materials in an enlarged format, and that Massillon was aware that this reasonable accommodation was necessary.  Instead, the parties dispute whether Massillon has in fact provided reasonable accommodations, and whether those accommodations are effective.

"In order to be reasonable, the accommodation must be effective (i.e., it must address the job-related difficulties presented by the employee's disability), and it must allow the employee to attain an 'equal' level of achievement, opportunity, and participation that a non-disabled individual

in the same position would be able to achieve." *Fleetwood v. Harford Sys. Inc.*, 380 F. Supp. 2d 688, 699 (D. Md. 2005). An employer is required to provide reasonable accommodations in trainings and in training materials. 42 U.S.C. § 12111(9) ("The term "reasonable accommodation" may include—(B) . . . appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.) The EEOC has issued the following enforcement guidance regarding an employer's obligation to provide reasonable accommodations for trainings:

> Must an employer provide reasonable accommodation so that an employee may attend training programs? Yes. Employers must provide reasonable accommodation (e.g., sign language interpreters; *written materials produced in alternative formats, such as braille, large print*, or on audio- cassette) that will provide employees with disabilities with an equal opportunity to participate in employer-sponsored training, absent undue hardship. This obligation extends to in-house training, as well as to training provided by an outside entity. Similarly, the employer has an obligation to provide reasonable accommodation whether the training occurs on the employer's premises or elsewhere.

U.S. Equal Employment Opportunity Commission, Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, # 15 (October 17, 2017), *available at* https://www.eeoc.gov/policy/docs/accommodation.html#requesting (emphasis added).

Here, a reasonable trier of fact could conclude that Massillon has consistently failed to provide effective accommodations to Ms. Poston by failing to provide accessible written materials for staff meetings and trainings. As a result, Ms. Poston has been deprived of an equal opportunity to benefit from and participate in those trainings.

There is no dispute that Ms. Poston needs large print to access written material. Massillon holds staff meetings and offers trainings on a regular basis, which typically feature discussions by presenters and attendees about written materials. (Poston Dep. 122:22-123:5.) Without access to

the materials during meetings and discussions, it is not possible for Ms. Poston to fully participate in or benefit from staff meetings and trainings, to the same extent as her peers without disabilities. (Poston Aff. ¶ 4; Poston Dep. 97:10-99:22.)

Ms. Poston's need for disability related accommodations was both obvious and known to Massillon administrators, as evidenced by the fact that Massillon consistently provided written materials to Ms. Poston in large print from 2002 through 2013. (Poston Aff. ¶¶ 7, 9.) Starting in 2014, Massillon proposed a change in this practice. Instead of providing accessible hard copy documents, Massillon decided to provide Ms. Poston with a laptop with magnification software to access documents electronically. Ms. Poston expressed concern that this would make it difficult for her to read more than one document at a time, but reluctantly agreed to give the plan a try in February 2014. (Poston Aff. ¶ 13; Poston Dep. 80:22-81:21.)

It quickly became clear that the new accommodations were ineffective. Beginning in the fall 2014, after the plan had been in place for a semester, Ms. Poston advised Massillon that the accommodations were not effective for her. (Poston Aff. ¶ 20; Poston Dep. 110:11-111-12; 80:22-81:8.) Under the ADA, an employer is not required to provide an employee's preferred accommodation, but if it proposes an alternative accommodation, it must ensure that the alternative accommodation is actually effective. In its Motion for Summary Judgment, Massillon offers no evidence demonstrating that 14-point font is actually effective for Ms. Poston. Instead Massillon appeared to reject Ms. Poston's requested accommodation on the grounds that enlarging all written material to that size is inconvenient for Massillon administrators. (*See* Fortner Aff. ¶ 12.) While it may be true that preparing these documents would take slightly more effort than enlargement to a smaller font size, this inconvenience certainly does not rise to the high standard of constituting

11

an undue burden. Indeed, the fact that Massillon previously provided written materials in an accessible enlarged hard copy format from 2002 to 2013 demonstrates that this accommodation was feasible, reasonable, effective, and not an undue burden. (Poston Dep. 123:16-25.)

Additionally, Massillon failed to consistently provide the alternative accommodation it had promised—materials in an electronic format prior to trainings. Ms. Poston has identified dozens of instances from 2014 to the present in which written materials were not provided in an accessible format, either electronically or in an accessible hard copy format. (*See, e.g.*, Poston Aff. ¶¶ 15 (March 18, 2014), 16 (May 23, 2014), 19 (September 24, 2014), 21 (October 22, 2014), 25 (December 11, 2014), 26 (January 7, 2015), 27 (January 13, 2015), 28 (January 16, 2015), 29 (January 21, 2015), 30 (March 25, 2015), 31 (April 29, 2015), 32 (July 13, 2015), 33 (August 18 and 19, 2015), 34 (August 21 and 30, 2015), 42 (October 12, 2015), 43 (October 14, 2015), 47 (October 22, 2015), 48 (November 18, 2015), 52 (December 15, 2015), 56 (March 16, 2016), 59 (April 20, 2016), 60 (May 19, 2016), 63 (August 19, 2016), 67 (April 19, 2017), 68 (May 30, 2017), 69 (September 1, 2017), 70 (September 21, 2017), 71 (October 5, 2017), 72 (November 15, 2017). ) In many cases, the materials were never provided, and in other cases they were provided long after Ms. Poston had requested them. Without the materials in advance, Ms. Poston is unable to fully and effectively participate to an equal degree as her colleagues without disabilities. (Poston Dep. 103:1-8.)

Massillon's brief contains numerous blanket assertions that accommodations have been provided, or that documents were provided after the fact. These bare allegations are unsupported by any specific facts or evidence, and they are specifically disputed by Ms. Poston. Significantly, Massillon has not attempted to argue that written materials are not provided to other employees

during staff meetings or trainings, or that those materials are not important (in fact, Massillon acknowledges that these trainings often feature lengthy written documents).

Massillon's motion and affidavit are curiously silent on what steps, if any, it took to actually implement its accommodations plan or ensure that reasonable accommodations were provided. Mark Fortner states that he sent an email to administrators in 2014 advising them of Ms. Poston's accommodations plan. However, there is no evidence that Mr. Fortner or Massillon took any subsequent steps to ensure that the plan was actually implemented, even after Ms. Poston repeatedly raised concerns about the lack of accessible written materials at meetings and trainings.

Viewing the evidence in the light most favorable to Ms. Poston, a reasonable trier of fact could conclude that Massillon was obligated to provide written materials for training and staff meetings to Ms. Poston in an accessible, large print format, and that it failed to do so.

**B. Massillon has not demonstrated that it actually provided effective accommodations, or that its failure to do so was attributable to Ms. Poston**

Massillon's brief provides a lengthy, and mostly correct, discussion of an employer's duty to engage in the interactive process to identify reasonable accommodations. However, Massillon's argument is misplaced—Ms. Poston does not claim that Massillon failed to engage in the interactive process, but rather that Massillon failed to actually provide the accommodations that the interactive process made clear were necessary.

The purpose of the interactive process is to identify effective accommodations. Here, Ms. Poston's need for disability related accommodations was obvious and known—she needed written materials in large print, which Massillon had been providing for years. While the parties' initial meetings to discuss accommodations were reasonable and appropriate, at a certain point the interactions became burdensome and unproductive. From the beginning, Massillon knew or

13

should have known that documents needed to be provided in a format large enough for Ms. Poston to read, and in time for her to be able to benefit from and participate in any discussion about those materials to the same degree as other employees.

Massillon acknowledges that there were instances in which it failed to provide the reasonable accommodations it had agreed to provide and which it knew Ms. Poston needed. However, Massillon argues that Ms. Poston allegedly failed to promptly notify Massillon immediately following each and every instance in which accommodations were not provided, and that this excuses Massillon's failure to ensure that documents were provided in advance of staff meetings and trainings.

The allegation that Ms. Poston failed to notify Massillon of the implementation issues is contradicted by the record. Ms. Poston repeatedly notified Massillon officials, both informally and formally, that both that the accommodations it proposed were ineffective, and that the alternative accommodations Massillon had agreed to provide were not actually being consistently provided. (*See e.g.*, Poston Aff, ¶¶ 16, 20, 23, 24, 35, 37, 39, 44-46, 50, 53, 55, 58, 61, 62, 64-66, 70-72.) From 2014 to the present, the parties have engaged in almost continuous written correspondence and discussions, formal and informal, with and without legal counsel. Many of Ms. Poston's informal requests for assistance were met with demands for more information or more meetings. (*See e.g.*, Poston Aff. ¶ 36, 51, 54.) Several of Ms. Poston's emails and letters were ignored by Massillon. (*See e.g.*, Poston Aff., ¶¶ 38, 44.) Many of Ms. Poston's suggestions to implement accommodations were rejected by Massillon. (*See e.g.*, Poston Aff. ¶¶ 20, 22, 23, 24, 55, 57.)

Whatever the cause for Massillon's failure to ensure that reasonable accommodations were provided, it cannot be seriously argued that it was attributable to a lack of information or input

from Ms. Poston. Ms. Poston's correspondence with Mark Fortner in the fall of 2015 regarding the accommodations issues illustrates Ms. Poston's dogged persistence in bringing the issue of accommodations to Massillon's attention, and the inadequacy of Massillon's response. Throughout the 2014 and 2015 school year, Ms. Poston had experienced numerous instances in which accommodations were not provided, despite the parties' written plan and subsequent amendments. (Poston Aff. ¶¶ 15, 16, 19, 21, 25, 27, 28-32.) At the very beginning of the new school year in August 2015, Ms. Poston attended two full days of workshops featuring inaccessible written materials and presentations and received inaccessible printed forms from the administration in her mailbox. (Poston Aff. ¶¶ 33-34.) Less than a week later, during the first week of the school year, Ms. Poston emailed Mr. Fortner to request a meeting, noting that accommodations were not being provided. (*Id.* ¶ 35.) Before he would agree to meet, Mr. Fortner demanded that Ms. Poston produce a detailed written description of each instance in which accommodations had not been provided, including the date, time, location, the specific accommodation that was not provided, and a summary of any meetings Ms. Poston had with administrators concerning that accommodation. (*Id.* ¶ 36, Ex. 14.) Ms. Poston promptly prepared formal written complaints providing the precise information Mr. Fortner had requested, utilizing Massillon's EEO forms. (*Id.* ¶ 37.) Mr. Fortner failed to respond, or to schedule a meeting. (*Id.* ¶ 38.) After a month had passed without a response, Ms. Poston escalated the complaints to the Superintendent. (*Id.* ¶ 39.) In the meantime, Ms. Poston participated in a number of additional meetings and trainings which featured inaccessible written materials which were not provided in advance. (*Id.* ¶ 42, 42.) Ms. Poston filed additional complaints concerning these incidents. (*Id.* ¶ 45.) Thereafter Ms. Poston participated in two meetings with Mr. Fortner and Massillon's attorney

15

regarding her accommodations complaints. (*Id.* ¶ 46.) No resolution was reached, and accommodations were not provided at more trainings, and at a union negotiation in which Mr. Fortner personally participated. (*Id.* ¶¶ 43, 47, 48.) Nearly three months after Ms. Poston's initial complaint, Massillon issued a written report,[1] prepared by its attorney, which acknowledged that accessible documents had not been provided in every case, asserted that there was no agreement by Massillon to provide documents in 18-point font, and concluded that presenters and staff were unaware of the need for accommodations. (*Id.* ¶ 49.) A second report with essentially the same findings and conclusions was issued shortly thereafter regarding the subsequent complaints. (*Id.* ¶ 51.) Rather than commit to specific steps to ensure that materials were provided in an accessible format at future trainings, Massillon's attorney recommended that Ms. Poston participate in more meetings to discuss accommodations. (*Id.* ¶¶ 49, 51.) Incredibly, in its brief, Massillon characterizes this sequence of events as an example of Ms. Poston's "refus[al] to work with the District. . ."[2]

In any event, providing written materials after a meeting or training is over is neither effective nor fair, and it is not an adequate substitute or an excuse for Massillon's failure to provide effective accommodations in a timely manner. To benefit from a training or a discussion about complex written materials, policies, or standards, one needs to have access to the document being

---

[1] The factual findings in that report, which is attached as an exhibit in Mark Fortner's affidavit, is inadmissible hearsay. The fact that the report was made, and the specific recommendations and admissions in the report, may be relied upon by Ms. Poston as party-opponent admissions. The report's conclusion that the materials were provided in 14-point font is specifically contradicted by the record, and denied by Ms. Poston. (*See, e.g.* Poston Dep., 117:13-121:3.)

[2] "Despite this process and the Board's good faith efforts, Poston refused to work with the District and notify Administrators of those instances where documents were inadvertently or mistakenly provided without large print/being enlarged. Indeed, even after Plaintiff objected to the written summary, and Fortner asked Poston to provide him with specific information so he could understand the issues and be in a better position to address and respond to her concerns, she did not provide him with the requested information. Instead, Poston continued to develop a list of the dates she did not receive a handout or portion of a handout in large print, and filed several internal complaints alleging that she was being discriminated against." (Def. Br. at 18.)

discussed at the time it is discussed. (Poston Dep. 97:10-99:22 (explaining importance of having access to the written materials being discussed in a training, and the inadequacy of viewing the materials after the training had concluded).) All of Ms. Poston's peers benefited from accessible handouts and the ability to read charts, graphs, and other information provided at trainings. Providing the materials after the training is not only an inadequate substitute for timely access to the materials, but would require Ms. Poston to devote additional time towards reviewing materials that were covered in the meeting.

Massillon also suggests that Ms. Poston should have spoken up during meetings and trainings to request accessible materials. As Ms. Poston explained during her deposition, she believed that would have been ineffective and disruptive. (Poston Dep. 92:25-93:19.) Massillon offers no evidence that accessible materials could actually have been provided, or that Massillon had ensured that such a process was in place. Massillon acknowledges, and the exhibits demonstrate that many presentations involved very lengthy written documents or power point presentations. (*See, e.g.*, Poston Aff., Exs. 12, 21, 26.) Massillon has never offered to provide a dedicated staff member to ensure that accessible copies of materials could be produced on an emergency basis during a training. Nor does it seem logical or feasible to insist that Ms. Poston demand that a presenter and her peers wait to start a meeting until accessible materials were provided. A number of the staff meetings and trainings at issue were either district wide or building wide, and some were actually presented by the very administrative staff who were responsible for ensuring that accessible materials were provided. (*See, e.g.*, Poston Dep. 120:6-17.) Rather than insist that Ms. Poston take burdensome steps to fix Massillon's mistakes,

17

Massillon should have taken affirmative steps to ensure that effective accommodations were provided in the first instance.

## CONCLUSION

Defendant's motion for summary judgment should be denied. Genuine issues of material fact remain as to the effectiveness of the accommodations Defendant provided, and viewing the facts in the light most favorable to Plaintiff, a trier of fact could conclude that Defendant discriminated against Plaintiff by failing to provide effective disability related accommodations.

    Respectfully submitted,

    /s/ Emily White
    Emily White (0085662)
    Marc E. Dann (0039425)
    DANNLAW
    P.O. Box 6031040
    Cleveland, Ohio 44103
    216-373-0539 Telephone
    216-373-0536 Fax
    notices@dannlaw.com
    Counsel for Plaintiff

## CERTIFICATE OF SERVICE

       I hereby certify that on the 18th day of December, 2017, a copy of the foregoing *Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment* was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Sherrie C. Massey (0067471)
David Kane Smith (0016208)
SMITH PETERS KALAIL CO., LAPA.
6480 Rockslide Woods Blvd. South
Suite 300
Cleveland, OH 44131-2222
Telephone: (216) 503-5055
Facsimile: (216) 446-6032
Email: dsmith@ohioedlaw.com
smassey@ohioedlaw.com

                                            /s/ Emily White
                                            Emily White (0085662)


## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum adheres to the page limitations set forth in Local Rule

7.1(f).  This case is assigned to the standard track.

                                            /s/ Emily White
                                            Emily White (0085662)