| | |
|---|---|
| STATE OF OHIO | : |
| | :    **Affidavit of Nicole Poston** |
| COUNTY OF STARK | : |

Now comes Nicole Poston, who being first sworn according to law states as follows:

1.   I, Nicole Poston, am over eighteen, and competent to testify to the following statements.

2.   I have a visual impairment due to aniridia, that substantially limits my ability to see and read small printed materials.

3.   To effectively read printed materials and images, I need the information to be provided in an enlarged format.

4.   In order to effectively access written materials and images on a screen, I use assistive technology such as a close captioned television system, or magnification software such as Zoomtext. However, when using magnification technology or software, I am only able to view a single document or image at a time. For this reason, assistive technology is not effective in situations where I need to view lengthy documents or compare two different documents at a time.

5.   Since 2002, I have been employed by the Massillon City School District as a teacher. From 2002 until 2017, I was employed as a Small Group Instructor. In August 2017, I became employed as an Intervention Specialist.

6.   As a teacher at Massillon, I am required to attend many staff meetings and trainings, including all day in-service trainings at the beginning and middle of each year, and monthly trainings. These meetings and trainings provide important information and training. Most meetings and trainings feature visual presentations, written materials provided to participants as handouts, and group discussions. Trainings and meetings have featured presenters from both within and outside Massillon City Schools.

7.   Throughout my employment, Massillon has been aware of my disability related limitation in seeing and reading, and my need for reasonable accommodations in order to access printed and written materials and images.

8.   From 2002 through 2013, Massillon consistently provided reasonable accommodations by providing accessible written materials, by permitting me to adjust my schedule to participate in meetings during daylight hours to accommodate disability related travel restrictions, and provided time and materials for me to enlarge instructional materials I use in class. No formal written accommodations plan was ever made, nor was one needed. Instead, Massillon administrators, including the special education director and my building principals, ensured that written and printed materials were provided to me in an accessible format.

9. From 2002 through 2013, Massillon never refused to provide any disability related accommodation I requested, including accessible printed materials, nor did anyone from Massillon ever indicate to me that it was difficult or burdensome to provide accommodations.

10. From 2002 through 2013, Massillon consistently provided me with written materials in an accessible format for staff meetings and trainings. From 2002 through 2013, Massillon provided materials in an enlarged hardcopy format. On the rare occasion that a document was inaccessible, I followed up with the presenter after the presentation to obtain the materials, and it was always provided. For staff meetings and trainings, accessible materials were either provided in advance or at the meeting or in-service. These accommodations permitted me to fully participate in and benefit from staff meetings and trainings.

11. In January 2014, Massillon refused my request to reschedule a meeting due to my disability related travel restriction. I filed a written complaint to Massillon on January 9, 2014, regarding the denial of accommodations. In my complaint, I requested that Massillon take steps to inform administrators of Ms. Poston's need for disability related accommodations, and the obligation to provide accommodations.

12. After I filed my complaint, Massillon requested medical documentation of my disability related limitations, which I provided.

13. On February 3, 2014, I met with Mark Fortner, Massillon's Assistant Superintendent and designated ADA coordinator, along with my attorney and an attorney from Massillon, to discuss my need for disability related accommodations. At the meeting, I explained that I needed written materials to be provided in an enlarged format, particularly for trainings and in-service meetings, and I noted that these had been provided in the past.

14. Following the meeting, Massillon drafted a written accommodations plan acknowledging my need for disability related accommodations. With respect to written and printed materials, Massillon agreed that "the District will either provide Ms. Poston copies of its in-service or training materials in 14 font size or more at in-services or trainings or by email in advance of such meetings." Additionally, Massillon agreed to notify administrators about the accommodations agreement.

15. On March 18, 2014, I attended a staff training. The training featured a power point presentation. The presentation was emailed to me less than thirty minutes before the training, and I did not have time to enlarge the presentation before the training began. Additionally, the training included inaccessible written handouts. A true and accurate copy of the handout I received is attached as Exhibit 1.

16. On May 23, 2014, Massillon held a required in-service training regarding district policies for Student Learning Objectives (SLO's). The training featured inaccessible printed materials and handouts that were not provided in advance. Through my attorney I promptly requested copies of the training materials

in large print, but copies were not provided.  A true and accurate copy of the handouts I received at the presentation are attached as Exhibit 2.

17. On June 30, 2014, I filed a charge of discrimination with the Equal Employment Opportunity Commission asserting that Massillon discriminated against me by failing to provide written materials at professional development trainings in an accessible large print format, and by requiring me to attend an evening meeting despite my disability related restriction on traveling after dark.

18. After I filed my charge of discrimination, Massillon consistently and regularly failed to provide large print or accessible materials to me at staff meetings and in-service trainings.

19. On September 24, 2014, a staff meeting was held.  The meeting featured a discussion of an inaccessible handout.  An accessible copy of the handout was not provided in advance of the meeting.  A true and accurate copy of the handouts and agenda is attached as Exhibit 3.

20. Early in the fall 2014 semester, I notified Mark Fortner that there were issues on the implementation and effectiveness of the February 2014 accommodations plan.  In October 2014, I met with Mr. Fortner to discuss my concerns.  I advised that 14 point font was too difficult to read and requested that the font size be increased from 14 point to 18 point.  Mr. Fortner instead proposed providing documents in an electronic format in advance, to be viewed with Zoomtext magnification software on a laptop. I advised Mr. Fortner that providing information solely in electronic format was not an effective accommodation for meetings and trainings because it was not possible to view more than one document at a time, and many trainings featured both a Powerpoint presentation and a discussion of printed handouts.

21. On October 22, 2014, Massillon held a staff workshop on special education data presented by staff from the Ohio Department of Education State Support Team 9. At the October 22, 2014 meeting materials were presented in inaccessible formats, and the District failed to provide large print or electronic materials.

22. On October 23, 2014, Mr. Fortner sent me a letter advising that Massillon would not agree to provide printed materials in large print.  Instead Mr. Fortner advised that the District would be providing a laptop with Zoomtext for me to use during trainings, and that "the District will make best efforts to provide you an electronic copy of presentations/handouts via its shared drive or by email prior to the scheduled meeting."

23. I responded by letter explaining that the change to the accommodations plan that he proposed was not effective, and noted that there had been another incident in which accommodations were not provided.

24. On December 1, 2014, Mr. Fortner sent me a letter requesting specific information about the accommodations that were ineffective and the incidents in which accommodations were not provided.  The same day, I met with Mr. Fortner on

another matter and during the meeting I advised that written materials had been provided in an inaccessible format at meetings and trainings. I also explained that providing materials electronically was not effective because it is not possible to view more than one document at a time, which limited my ability to participate in meetings that included both a presentation and handouts, discussion of lengthy documents, or a comparison of multiple documents. On behalf of the District, Mr. Fortner responded that the District would not agree to provide written materials in 18 point font, but would provide the materials in an electronic format.

25. On December 11, 2014, I attended a training on the Ohio Teacher Evaluation System (OTES), but Massillon failed to provide accessible materials in 18 point font, and the training included inaccessible videos which were not provided to me in advance.

26. On January 7, 2015, I attended a Teacher Based Training workshop on Active Learning and Engagement strategies. The training featured an inaccessible handout and group discussion. A true and accurate copy of the handout is attached as Exhibit 4.

27. On January 13, 2015, Massillon held a meeting of special education instructors, to provide training on compliance with new state standards for student Individualized Education Programs (IEPs), but materials were not provided in an accessible format before the training, and as a result, I was not able to fully participate in the meeting. The materials were emailed to me after the training. A true and accurate copy of the emails I received from Massillon regarding the training materials is attached as Exhibit 5.

28. On January 16, 2015 Massillon held an all-day in-service training for special education instructors, which featured an inaccessible powerpoint presentation and books and other written materials in an inaccessible format. A true and accurate copy of the presentation materials I received is attached as Exhibit 6.

29. On January 21, 2015, Massillon held a staff training on technology which featured an inaccessible powerpoint presentation which was not provided to me in advance.

30. On March 25, 2015, Massillon conducted an internal training for teachers on Positive Behavioral Supports and Interventions which featured inaccessible print handouts, video, and a powerpoint presentation which was provided only after the conclusion of the presentation. Because the materials were not provided until hours after the meeting was over, I could not participate in or benefit from the training to the same degree as my colleagues.

31. On April 29, 2015, Massillon conducted an internal training for teachers on Problem Based Learning, which featured inaccessible print handouts, and a video and powerpoint presentation which was not provided to me prior to the training. A true and accurate copy of the meeting handouts is attached as Exhibit 7.

32. On July 13, 2015, Massillon offered a training on use of Google and email. Two months prior to the training, I emailed the presenters to advise that I needed accommodations to access written material due to my vision impairment, and the presenters assured me that the presentation would be accessible. Although I had been advised that the materials would be shared in advance via a shared drive, and that the training would be accessible on my laptop, the presentation consisted of an inaccessible video demonstration and inaccessible materials that were not provided prior to the training. A true and correct copy of my email correspondence regarding this training is attached as Exhibit 8.

33. On August 18 and 19, 2015, at the beginning of the new school year I attended two full days of trainings and workshops, including district wide and building wide trainings. The written materials for these trainings and meetings were not provided to me in advance or in an accessible hardcopy format, and consequently I was unable to follow along or contribute to discussions during the training with her fellow educators. The materials were emailed to me, and all other participants, after the trainings had been concluded. A true and correct copy of the email correspondence is attached as Exhibit 9. True and correct copies of a portion of the inaccessible training materials utilized during the meeting is attached as Exhibits 10, 11, and 12.

34. On August 20 and 31, 2015, Massillon provided me with human resources forms, including medical and emergency contact forms, in inaccessible hardcopy format. A true and correct copy of the forms I received are attached as Exhibit 14.

35. On August 26, 2015, the first full week of the new school year, I emailed Mr. Fortner to advise that accommodations had not been provided by Massillon on numerous occasions in the prior week, and requested a meeting to discuss the matter.

36. On September 2, 2015, Mr. Fortner responded to my request for a meeting with a letter stating that Massillon would agree to schedule a meeting only after I produced a list identifying every instance in which an accommodation had not been provided, including the date, time, location, specific accommodation, and the date of any meeting with the administration to discuss the lack of accommodations. A true and correct copy of my correspondence with Mr. Fortner and his response is attached as Exhibit 14.

37. On September 6, 2015, I utilized Defendant's EEO internal complaint form to identify seven instances from August 18, 2015 through August 31, 2015 in which Defendant failed to provide printed materials in an accessible format. I submitted these written forms to Mr. Fortner.

38. Mr. Fortner failed to acknowledge or respond to my written complaints, or to schedule a meeting with me to discuss my concerns.

39. On October 1, 2015, having received no response from Mr. Fortner, I appealed each complaint to Massillon's superintendent per the EEO policy. True and accurate copies of my complaints, and appeals, are attached as Exhibit 15.

40. On October 7, 2015, Mr. Fortner hand delivered a letter to me, advising me that he had reviewed the internal complaints, and requesting two meetings to discuss the matter the following week, at 3:45 on October 13 and 15.

41. On October 8, 2015, I responded the next day that I was unavailable on the dates he proposed, and suggested a meeting on October 14, 2015. A copy of his letter and my response is attached as exhibit 16.

42. On October 12, 2015, I was required to participate in a professional development day training in which materials for four separate sessions were provided in an inaccessible format, and technical issues with the laptop Massillon provided prevented me from having access to the materials in an accessible format during the training. True and correct copies of a portion of the inaccessible written materials I received during these trainings is attached as Exhibit 17.

43. On October 14, 2015, during a union contract negotiation session involving Mr. Fortner, Massillon presented written material to me in an inaccessible format. A true and correct copy of the inaccessible printed document is attached as Exhibit 18.

44. On October 15, 2015, having heard no response from Mr. Fortner on my earlier meeting request, I wrote to Mr. Fortner and Superintendent Goodright advising that I was available to meet on either October 20 or October 22, 2015, and objecting to postponing the meeting any further. A true and correct copy of my correspondence with Massillon is attached as Exhibit 19.

45. On October 20, 2015, I filed five additional EEO complaint forms regarding Massillon's failure to provide reasonable accommodations during the October 12, 2015 professional development training, and during the October 14, 2015 union negotiation session. A true and correct copy of these complaints is attached as Exhibit 20.

46. On October 20, 2015, and November 4, 2015, I participated in two separate meetings with Massillon and Massillon's legal counsel to discuss the denial of reasonable accommodations, but no resolution was reached.

47. On October 22, 2015, I participated in a training on inclusive learning that featured an inaccessible powerpoint and inaccessible written materials. A true and correct copy of the presentation materials I received is attached as Exhibit 21.

48. On November 18, 2015, I was required to participate in a professional development training, which featured an inaccessible powerpoint presentation, videos, and handouts.

49. On November 25, 2015, Massillon issued a written response to my complaints acknowledging instances in which reasonable accommodations were not provided, but concluding that "there was not a clear and mutual understanding regarding your specific accommodations" and recommending an additional meeting to discuss accommodations and come to a written agreement concerning accommodations and implementation.

50. On November 30, 2015, I filed a new EEO complaint regarding the lack of accessible materials during the November 18, 2015 professional development training, and requested a meeting to discuss accommodations and that training on ADA compliance be provided to Massillon employees. A true and correct copy of the complaint is attached as Exhibit 22.

51. On December 16, 2015, Massillon issued a response to my November 30 EEO complaint, concluding that there was no mutual agreement regarding accommodations and noting that "some instances where accommodations were not provided may be attributed to lack of understanding of the accommodation by the person/people responsible for providing the documentation, lack of communication, lack of time or control", and reiterating the prior recommendation that the parties meet and come to a written agreement concerning accommodations and implementation.

52. On December 16, 2015, I was required to attend a professional development training which featured an inaccessible video presentation that was not provided to me in advance.

53. On December 30, 2015, I filed a second charge of discrimination with the EEOC regarding Massillon's failure to provide effective reasonable accommodations by consistently failing to provide written and printed materials to me in an accessible format.

54. On January 25, 2016, I participated in a meeting with Massillon and its counsel to discuss the reasonable accommodations I needed at work, and Massillon again requested that I identify the accommodations I was requesting in writing.

55. On February 11, 2016, I delivered a written list to Defendant identifying my requested accommodations, reiterating that a smaller font size and magnification software are not effective accommodations for written training materials. A true and correct copy of my written draft proposal is attached as Exhibit 23.

56. On March 16, 2016, I was required to attend a professional development training regarding state testing standards, but materials were provided to me in an inaccessible format rather than 18 point font as I had requested. A true and correct copy of the inaccessible materials I received is attached as Exhibit 24.

57. On March 17, 2016, after receiving no further response to my written request for reasonable accommodations, I sent a letter to Mr. Goodright and Mr. Fortner requesting an update on the status of my request. A true and correct copy of my letter to Massillon is attached as Exhibit 25.

58. On March 23, 2016, I engaged in another meeting to discuss my request for reasonable accommodations, but no resolution was reached.

59. On April 20, 2016, I attended a staff meeting, which included an inaccessible presentation and written materials that were provided in an inaccessible format. A true and correct copy of the written materials I received is attached as Exhibit 26.

60. On May 19, 2016, I attended a staff meeting which featured an inaccessible Smartboard presentation and a group project with inaccessible hardcopy print forms, making it impossible for me to follow along or participate in the group discussion.  A true and correct copy of inaccessible materials I received at the meeting is attached as Exhibit 27.

61. On June 28, 2016, I participated in a meeting with Massillon regarding my request for reasonable accommodations, and although I presented a number of new suggestions for how Massillon could implement reasonable and effective accommodations, no agreement was reached.

62. On July 26, 2016, I participated in another meeting with Massillon to discuss reasonable accommodations with Massillon and Massillon's legal counsel.  Massillon suggested that I was no longer able to perform my job due to my need for disability related accommodations, and proposed that I be required to submit to a "fitness for duty" medical examination.

63. On August 19, 2016, I participated in an all-day in service training program, at which materials for one session were provided in inaccessible hardcopy format.  A true and correct copy of the inaccessible materials I received is attached as Exhibit 28.

64. On October 26, 2016, I participated in a meeting with the Massillon Board of Education to discuss my need for reasonable accommodations, but no agreement was reached.

65. On November 21, 2016, I participated in another meeting with Massillon to discuss my need for reasonable accommodations, but no agreement was reached.

66. On January 18, 2017, after this lawsuit was commenced, I engaged in another meeting with Massillon to discuss my need for reasonable accommodations in accessing printed materials, and an agreement was reached that Massillon would provide written materials in an accessible format.

67. On April 19, 2017, I attended a staff training which featured inaccessible materials that were not provided to me prior to the meeting.  True and correct copies of the inaccessible handouts I received are attached as Exhibit 29.

68. On May 30, 2017, I attended a staff workshop which featured inaccessible written materials.  A true and correct copy of the inaccessible materials I received at the training are attached as Exhibit 30.

69. On September 1, 2017, I attended a staff meeting that featured inaccessible written materials.

70. On September 21, 2017, I received a security agreement in my mailbox in an inaccessible hardcopy format.  I immediately advised Massillon that the document was inaccessible and requested an accessible copy, which was later provided.  A true and correct copy of the inaccessible document is attached as Exhibit 31.

71. On October 5, 2017, I received another inaccessible printed document in my mailbox seeking updates on my contact information. I immediately advised Massillon that the document was inaccessible, and requested an accessible copy. Massillon agreed to provide the information verbally, but to date has not done so. A true and correct copy of the inaccessible document I received is attached as Exhibit 32.

72. On November 15, 2017, I attended a staff training which featured an inaccessible Powerpoint presentation that was not provided in advance, and an inaccessible handout. I had difficulty following along with the training due to the lack of accessible materials. Immediately following the training, I emailed Mr. Fortner to request the information in an accessible format. On December 5, 2017, more than two weeks after the training had concluded, the documents were provided in an accessible format.

**Further Affiant Sayeth Naught.**

*Nicole Poston*
Nicole Poston

Sworn to and subscribed before me by Nicole Poston, December 15, 2017.

[seal]

JANE LOGAN, NOTARY
STATE OF OHIO
MY COMMISSION EXPIRES: 04/20/2018

*Jane Logan*
Notary Public

State of Ohio