# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| NICOLE POSTON, | ) | CASE NO. 5:16-cv-3013 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MASSILLON CITY SCHOOLS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion for summary judgment filed by defendant, Massillon City Schools (the "School") (Doc. No. 23 ["MSJ"][1]), the memorandum in opposition filed by plaintiff, Nicole Poston ("Poston") (Doc. No. 24 ["Opp'n"]), and the School's reply (Doc. No. 25 ["Reply"]). For the reasons set forth herein, the School's motion is **granted**.

## I. BACKGROUND

On December 16, 2016, Poston filed her complaint against the School asserting violations of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* (the "Rehabilitation Act"); and the Ohio Fair Employment Practices Act, Ohio Rev. Code § 4112.01, *et seq.* ("OFEPA"). (Doc. No. 1 ["Compl."].)

Poston is a visually impaired teacher who has been employed by the School since 2002.[2] (Doc. No. 24-1, Affidavit of Nicole Poston ["Poston Aff."] ¶¶ 2, 5; Doc. No. 23-2, Affidavit of

---

[1] The memorandum in support of the MSJ was mistakenly filed twice, once as part of the main document (Doc. No. 23) and a second time as an attachment (Doc. No. 23-1). The page references herein are to the main document.

[2] Poston's visual impairment is due to aniridia (a genetic condition). She is considered legally blind. (Doc. No. 21-1, Deposition of Nicole Poston ["Poston Dep."] at 140-41.) (All page number references are to the page identification number generated by the Court's electronic docketing system.)

Mark Fortner[3] ("Fortner") ["Fortner Aff."] ¶¶ 3, 4.) Throughout Poston's employment, she has consistently received positive evaluations. (Fortner Aff. ¶ 40 and Ex. V.)[4] Also throughout Poston's employment, the School was aware of her disability and her need for reasonable accommodations. (Poston Aff. ¶ 7; Fortner Aff. ¶¶ 6, 8.)

The School requires teachers to attend regular staff meetings and trainings, including all day in-service sessions. These meetings often feature visual presentations and written materials in the form of handouts for participants. (Poston Aff. ¶ 6.)

From 2002 through 2013, the School consistently provided reasonable accommodations to Poston without any indication that it was difficult or burdensome. (Poston Aff. ¶¶ 8, 9; *see also* Fortner Aff. ¶ 6.)[5] It did this by providing accessible written materials, by permitting Poston to adjust her schedule to participate in meetings during daylight hours so as to accommodate her disability-related travel restrictions, and by providing time and materials for Poston to enlarge instructional materials she uses in class. (Poston Aff. ¶¶ 8, 10.) For staff trainings, powerpoint presentations were typically provided electronically in advance, and handouts were provided in large print hard copy. (Poston Dep. at 233.)[6] These accommodations permitted Poston to fully participate in and benefit from staff meetings and training sessions. (Poston Aff. ¶ 10.) During all that time, there was never any formal, written accommodation plan because none was needed. (*Id.*

---

[3] Fortner is currently the Assistant Superintendent of the Massillon City School District and has held that position since August 2007. (Fortner Aff. ¶ 2.)

[4] In fact, during the 2014-2015 school year, Poston received an overall rating of "Accomplished," the highest rating a teacher can receive. (Fortner Aff. Ex. V at 570.)

[5] During that time, there was no formal process. Poston simply verbally notified the School of her needs by contacting then-Director of Curriculum, John Graven, who, in turn, communicated with other administrators regarding the accommodations being provided to Poston. (Poston Dep. at 160-62.)

[6] In the rare instances (about 1% of the time) that the School failed to provide accessible materials, Poston followed up with the training provider to obtain the materials. (Poston Dep. at 159.)

¶ 8; *see also* Fortner Aff. ¶ 6.) But Poston claims that, since 2014,[7] the School has failed to provide her with reasonable accommodations. (Poston Aff. ¶¶ 15-16, 19, 21, 25-34, 42-43, 47-48, 52, 56, 59-60, 63, 67-72 and Exs. 1-12, 17-18, 21, 24, 26-27, 28-32.)

On January 9, 2014, Poston filed an internal EEO complaint because the School refused to provide her with a reasonable accommodation by rescheduling the time of a meeting due to her disability-related travel restrictions. (Poston Aff. ¶ 11; Fortner Aff. ¶ 7.)[8] Fortner and the School's attorney met with Poston on a few occasions between January 9, 2014 and February 3, 2014 to discuss her concerns about reasonable accommodations,[9] during which time the School requested written certification from her physician that Poston is legally blind. (Fortner Aff. ¶ 8; Poston Aff. ¶¶ 12, 13.) Thereafter, the School and Poston signed a letter agreement dated February 3, 2014 (the "First Plan") memorializing the reasonable accommodations that would be provided. (Fortner Aff. ¶ 9 and Ex. D; Poston Aff. ¶ 14.)[10] Fortner promptly notified all the administrators identified

---

[7] Poston testified that, in 2014, she started keeping track of instances when she was not provided with accessible printed and written materials. (Poston Dep. at 176.)

[8] Poston alleges in her complaint that, from 2002 through 2013, the School "regularly provided [her] with written materials in large print as a reasonable accommodation and accomodated [her] night driving limitation by scheduling meetings during the day where possible." (Compl. ¶ 20.) Although her initial internal complaint in January 2014 arose from a meeting that did not accommodate her limited driving times, judging from the bulk of the allegations in her complaint, as well as from the arguments in her opposition brief, accommodation as to meeting times is not really an issue. Instead, Poston's concerns are focused on her need for written materials in large print.

[9] The School consistently refers to its meetings and discussions with Poston as an "interactive process." This is obviously a reference to 29 C.F.R. § 1630.2(o)(3), which provides, in relevant part, that "[t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation."

[10] In the First Plan, the School specifically agreed to provide the following:

1) Large screen computer monitor - the District currently provides a large screen computer monitor for Ms. Poston and will continue to do so
2) Zoomtext - the District currently provides this software for Ms. Poston's computer and will continue to do so
3) IT in-service and in-service involving IT - the District has provided and will continue to provide Ms. Poston a large computer monitor with Zoomtext or another computer with similar modifications for Ms. Poston to actively participate in said in-services and trainings. If the District is unable to provide the computer access during said IT in-service or in-service involving IT, the District will schedule later in-service/training for Ms. Poston

in the First Plan of the need to accommodate Poston and provided each with a copy of the First Plan. (Fortner Aff. ¶ 10 and Ex. E.) The School concedes that, despite its attempts to comply, there were times following the execution of the First Plan when outside presenters did not initially provide materials in an accessible format, and one time when the School itself failed to do so. (*Id.* ¶ 11.) On those occasions, the School promptly obtained the accessible materials and provided them to Poston. (*Id.*)

On June 30, 2014, Poston filed her first EEOC charge of discrimination. (Poston Aff. ¶ 17.) Although the School received a copy from the EEOC, it indicated: "No action required by you at this time." (Fortner Aff. ¶ 19.)[11]

Early in the fall 2014 semester, Poston notified Fortner that there were problems with implementation of her reasonable accommodations, and she met with Fortner to discuss her concerns. (Poston Aff. ¶ 20; Fortner Aff. ¶ 12.) Fortner proposed a second accommodation plan, which was memorialized in a letter dated October 23, 2014 (the "Second Plan"). (Fortner Aff. ¶ 13 and Ex. F; *see also* Poston Aff. ¶ 22.)[12] Fortner explained to Poston "the implementation issues

---

        on either her computer with large monitor or Zoomtext or a similar modified computer system.
4)    IT Priority Status - the District has provided and will continue to have its IT Department place Ms. Poston on priority status for issues related to Ms. Poston's computer system.

(Fortner Aff. Ex. D at 506-07.) Under the First Plan, the School also agreed to generally provide one-week's notice of meetings scheduled before or after school that Poston would be required to attend (not including meetings or conferences already on the school calendar), to allow Poston time to obtain suitable transportation. (*Id.* at 507-08.) The School further agreed to either provide written materials "in 14 font size or more" at in-services and trainings, or to provide the materials by email in advance of such meetings. (*Id.* at 509, emphasis omitted.) Finally, as part of the First Plan, Poston withdrew her January EEO complaint. (*Id.*)

[11] The School was not required to respond to this charge until May 11, 2015. (*See* Fortner Aff. ¶ 19b.) On September 23, 2016, the EEOC dismissed this charge, determining that the "evidence fails to support that [Poston] was discriminated against as alleged." (*Id.* ¶ 19c.)

[12] In the Second Plan, the School specifically agreed to the following:

1.    The District will continue to provide you a large screen computer monitor at your desk.
2.    The District will replace your desktop computer and replace it with a laptop with a screen size of at least 15 inches. The Zoomtext software on your desktop will be transferred onto

4

that the [School] experienced with enlarging documents" and offered alternatives.[13] (Fortner Aff. ¶ 14.)[14] Fortner also asked Poston to advise him "as soon as possible" any time she "experience[ed] issues with the accommodations[,]" and stressed that it was important that she and the various administrators maintain "open and meaningful discussion if there are any issues or problems so they can be promptly addressed." (*Id.* Ex F at 519.)

By letter dated November 14, 2014, Poston advised Fortner that she was "not satisfied with everything . . . in this letter[,]" and that "[o]ne of the accommodations the [School] chose to change

---

<div style="padding-left: 2em;">

the laptop. The laptop will be able to connect to the large screen computer monitor on your desk and you will be provided a mouse to connect to your laptop as well.

3. IT Priority Status - you have a priority status for requests made to the IT Department related to your computer system.

4. For In-Services and Staff Meetings - the laptop issued to you is to be used by you so you can view any presentations or handouts in electronic format on your laptop using Zoomtext. The District will make best efforts to provide you an electronic copy of presentations/handouts via its shared drive or by email prior to the scheduled meeting.

5. Paper - the District provided you 11 x 17 paper in the event you need to make larger print copies of documents for inservices. Should you need additional paper, please contact me [Fortner].

6. Other than parent teacher conferences and school based staff meetings on the school calendar, the District will continue to provide one-week advance notice of meetings scheduled before or after school that you are required to attend, involving 10 or fewer participants. If notice is not provided, the District may continue with the meeting and meet or email you the next school day to let you know what happened at the meeting or the District can cancel and reschedule the meeting. Note: This accommodation does not apply to any disciplinary hearing notification requirements in the labor contract.

</div>

(Fortner Aff. Ex F at 517-18.)

[13] With respect to font size, the Second Plan summarized the School's problems as follows:

<div style="padding-left: 2em;">

You requested the 14 font size be increased to 18 font in printed materials administrators provide you at school. We all acknowledged the difficulties encountered in implementing the 14 font size accommodation last year, which was due to a variety of factors, including, original materials coming in varied font sizes and difficulty in achieving uniformity with 14 font in copying those materials; practical issues in copying materials (e.g. enlarging vs. increasing percentage to be copied and unintentionally cutting off parts of the material). By providing the laptop with Zoomtext software and access to electronic copies of documents via the shared drive or email, we anticipate you will be able to view all materials. We anticipate this should better address the situation and result in minimal need for printed materials. For those few occasions, the District has provided you with 11 x 17 paper and use of the copier to make printed copies you need.

</div>

(Fortner Aff. Ex. F. at 519.)

[14] There was no mention in the Second Plan of any accommodation with respect to scheduling of meetings at times that honored Poston's driving restrictions.

is completely unacceptable and is not an effective alternative that meets my needs." (*Id.* ¶ 17 and Ex. G; *see also* Poston Aff. ¶ 23.) She was not specific in identifying the one "completely unacceptable" accommodation. (Fortner Aff. ¶ 18.) In her letter, Poston also advised that an additional failure to accommodate had occurred since they last met in September, and she was "considering filing multiple additional charges through EEOC against the [School] for continued discrimination under the ADA due to my disability." (Fortner Aff. ¶ 17 and Ex. G. at 522.)[15] On December 1, 2014, Fortner wrote to ask Poston for clarification, indicating that "[o]nce we have an understanding of the specifics, we will be in a better position to address the situation and respond to your concerns." (Fortner Aff. ¶ 18 and Ex. H at 524.)

Poston did not respond to the December 1, 2014 letter; rather, she moved forward with providing information in support of her June 2014 EEOC charge. (*Id.* ¶ 19.) Poston claims she spoke with Fortner on December 1, 2014 on another matter and, at that time, "advised that written materials had been provided in an inaccessible format at meetings and trainings[]" and "that providing materials electronically was not effective because it is not possible to view more than one document at a time, which limited [her] ability to participate in meetings . . . ." (Poston Aff. ¶ 24.) Poston claims that "Fortner responded that the [School] would not agree to provide written materials in 18 point font, but would provide the materials in electronic format." (*Id.*)

Fortner claims that, despite the requirement contained in the Second Plan that Poston was to let Fortner know as soon as possible any time she experienced issues with accommodations, between December 1, 2014 and August 25, 2015, she consistently failed to do so. (Fortner Aff. ¶ 20, 22.) Rather, in an email to Fortner dated August 26, 2015, Poston stated that she had

---

[15] Fortner states that one of the recurring problems with accommodating Poston was her persistent failure to immediately notify him when there was a problem, making prompt corrective action impossible. (Fortner Aff. ¶ 16.)

6

"documented approx. [sic] 18 occasions when the [School] has failed to honor and provide accommodations that were requested and discussed." (*Id.* ¶ 22, quoting Ex. J at 534; Poston Aff. ¶ 35.) Poston also inquired whether the parties should meet again.

Fortner answered Poston's email by letter on September 2, 2015, pointing out Poston's failure to timely notify him pursuant to the Second Plan, and indicating that the School would respond to Poston's request for a meeting after she produced a list of every instance in which an accommodation had not been provided, including the date, time, location, and alleged lack of accommodation, plus the dates of all meetings with the administration to discuss lack of accommodations. (Fortner Aff. ¶ 23 and Ex. K; Poston Aff. ¶ 36.)

Instead of responding to Fortner's request, on September 6, 2015, Poston utilized the School's internal EEO complaint form to identify seven instances between August 18 and August 31, 2015 when accommodations were not provided. (Poston Aff. ¶ 37; Fortner Aff. ¶ 24 and Ex. L.) When Fortner failed to acknowledge or respond to the written complaints, Poston filed appeals pursuant to the EEO policy. (Poston Aff. ¶¶ 38-39 and Ex. 15.) On October 7, 2015, Fortner hand-delivered a letter to Poston requesting to meet. (Fortner Aff. ¶ 25 and Ex. M; Poston Aff. ¶ 40.) Poston responded by email that she was not available on the suggested dates, and she proposed an alternative date. (Poston Aff. ¶¶ 41; Fortner Aff. ¶ 25 and Ex. N.) Hearing nothing in response, Poston wrote again to Fortner and the superintendent proposing additional meeting dates and objecting to any further delay. (Poston Aff. ¶ 44 and Ex. 19.) She followed this with five additional internal EEO complaints. (*Id.* ¶ 45 and Ex. 20.)

On October 20, 2015 and November 4, 2015, Poston participated in two meetings with the School and its legal counsel to discuss the denial of reasonable accommodations, but no resolution was reached. (*Id.* ¶ 46; Fortner Aff. ¶¶ 26, 27.) The School decided to refer Poston's twelve

7

complaints to an outside investigator, Attorney Nicole Donovsky, who met with Poston to discuss the five complaints she had filed on October 20, 2015. (Fortner Aff. ¶ 28.) Although Attorney Donovsky offered to meet with Poston to also discuss her initial seven complaints, Poston declined. (*Id.*)

On November 25, 2015, Attorney Donovsky issued a written response to Poston's complaints concluding that there was not a clear and mutual understanding regarding Poston's requested accommodations, and suggesting another meeting to discuss accommodations and come to a written agreement. (Fortner Aff. ¶ 29 and Ex. R; Poston Aff. ¶ 49.) Five days later, Poston filed another internal EEO complaint. (Fortner Aff. ¶ 30 and Ex. S; Poston Aff. ¶ 50.) On December 16, 2015, Attorney Donovsky issued a memorandum outlining her conclusions regarding the initial seven complaints, as well as the latest complaint, and again recommending a further meeting. (Fortner Aff. ¶ 31 and Ex. T; Poston Aff. ¶ 51.)

On December 30, 2015, Poston filed a second EEOC charge against the School (Poston Aff. ¶ 53), wherein she alleged that she was discriminated against on the basis of her disability and retaliated against for filing her first charge. (Fortner Aff. ¶ 32.)[16]

On January 25, 2016, Poston participated in a meeting with the School and its legal counsel wherein the School again asked her to identify in writing the accommodations she was requesting. (Poston Aff. ¶ 54; Fortner Aff. ¶ 34.) Poston delivered her written list on February 11, 2016. (Poston Aff. ¶ 55 and Ex. 23.) Additional meetings were conducted on March 23, 2016, June 28,

---

[16] The School responded to this charge on February 24, 2016. (Fortner Aff. ¶ 32a.) On September 23, 2016, the EEOC issued its dismissal of this charge, determining that the "evidence fails to support that [Poston] was discriminated against as alleged." (*Id.* ¶ 32b.) There is no mention in the complaint of this second charge, although the first one is specifically set forth. (*See* Compl. ¶¶ 31-85.)

2016,[17] July 26, 2016,[18] and November 21, 2016. (Poston Aff. ¶¶ 58, 61, 62; Fortner Aff. ¶ 34.) The School Board also met with Poston in an executive session on October 26, 2016, concerning her thirteen internal complaints. (Fortner Aff. ¶ 34.)

A third agreement regarding accommodations was finalized on January 18, 2017, after this lawsuit was filed (the "Third Plan"). (Fortner Aff. ¶ 37 and Ex. U; Poston Aff. ¶ 66.)[19] Poston nonetheless asserts that the failures to accommodate continue. (Poston Aff. ¶¶ 67-72.)

## II. DISCUSSION

**A.    Standard of Review**

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The ADA defines disability discrimination as including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual

---

[17] Poston claims that, during this meeting, she presented a number of new suggestions for reasonable accommodations. (Poston Aff. ¶ 61.) She does not specify what those suggestions were.

[18] Poston claims that, at this meeting, the School suggested she was no longer able to perform her job and proposed that she be required to submit to a "fitness for duty" medical examination. (Poston Aff. ¶ 62.)

[19] The Third Plan, notably, agrees to Poston's request for written materials in 18-point font and hard copies of all documents (in accessible format). It also sets clear time frames within which Poston must inform the School of any failure to comply with its provisions.

with a disability who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer.]" 42 U.S.C. § 12112(b)(5)(A).[20]

To establish a *prima facie* claim of disability discrimination based on a failure to accommodate, a plaintiff must first show that: "(1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the position, such that he can perform the essential functions of the job with or without a reasonable accommodation; (3) the employer knew or had reason to know of his disability; (4) the employee requested an accommodation; and (5) the employer failed to provide a reasonable accommodation thereafter." *Green v. BakeMark USA, LLC*, 683 F. App'x 486, 491 (6th Cir. 2017) (citations omitted). "Once an employee establishes a *prima facie* case, the burden shifts to the employer to demonstrate that any particular accommodation would impose an undue hardship on the employer." *Id.* (internal quotation marks and citation omitted).

The only dispute in this case is whether the School provided reasonable accommodations. (*See* MSJ at 457; Opp'n at 579.)[21] "Athough determination of the reasonableness of a proposed modification is often fact-specific, a court may grant summary judgment in favor of a defendant if the plaintiff fails to present evidence from which a jury may infer that the accommodation is 'reasonable on its face, *i.e.*, ordinarily or in the run of cases,' . . . ." *Shaikh v. Lincoln Mem. Univ.*,

---

[20] Poston has brought her claims under the ADA, the Rehabilitation Act, and Ohio law. "[A]nalysis of claims made pursuant to the Americans with Disabilities Act applies to claims made pursuant to Ohio Revised Code § 4112.02 and the Rehabilitation Act." *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010) (citing cases). "Therefore, the following discussion of the Americans with Disabilities Act applies to all of [Poston's] claims." *Id.*

[21] "In determining whether an accommodation is reasonable, the employer must consider (1) the particular job involved, its purpose, and its essential functions; (2) the employee's limitations and how those limitations can be overcome; (3) the effectiveness an accommodation would have in enabling the individual to perform the job; and (4) the preference of the employee." *Keever v. City of Middletown*, 145 F.3d 809, 812 (6th Cir. 1998) (citing 29 C.F.R. § 1630.9(a), appendix).

608 F. App'x 349, 355 (6th Cir. 2015) (quoting *Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 464 (4th Cir. 2012) (further citation omitted)).

**B.      Analysis**

The gravamen of Poston's complaint is set forth in her opposition brief:

> . . . Poston, a visually impaired teacher employed by Massillon City Schools . . ., asserts that her employer has discriminated against her by failing to provide effective disability related accommodations. Specifically, Ms. Poston asserts that throughout the past three years, Massillon has failed on dozens of occasions to ensure that written materials are furnished to her in an accessible large print format so that she can effectively participate in and benefit from staff meetings and trainings to the same degree as her colleagues without disabilities.

(Opp'n at 574.) The focus of Poston's complaint is on the School's alleged refusal to accede to her request that all written materials be supplied to her in advance and in 18-point font, or what she refers to as "accessible format."[22] But Poston has failed to make the necessary preliminary showing that this request "seems reasonable on its face[,]" *Gleed v. AT&T Mobility Servs., LLC*, 613 F. App'x 535, 538 (6th Cir. 2015) (citation omitted); *see also* n.13, *supra*, given the considerable diversity of materials involved in the various training sessions, as well as the variety of the sources of those materials.[23]

---

[22] *See also* n.8, *supra*.

[23] Although Poston has attached to her affidavit many samples of the materials she believes should have been provided in 18-point font, these samples do not speak for themselves. Perhaps one *could* make the argument that, for materials originally created by someone associated directly with the School, enlarging those materials for Poston's use might have been relatively easy; but it is not difficult to see that, when the School was not the original source of the materials, responding to that request was virtually impossible. In fact, the Second Plan clearly delineates the many problems that 18-point font presented for the School. (*See* Fortner Aff. Ex. F at 519, as quoted in n.13, *supra*.) During her deposition, when questioned about the School's stated difficulties, Poston insisted that she "had reason to dispute that they were stating that it was not possible." (Poston Dep. at 189-90.) She further insisted that it was possible to provide documents in larger fonts as "had been provided in the past[.]" (*Id.*) But she has not supplied any samples of such past documents to support her assertion. Moreover, and importantly, the issue is not what is *possible*, but what is *reasonable*. There is no question that Poston prefers materials in 18-point font. But the School is not required to reasonably accommodate her preference; it is required to reasonably accommodate her disability.

11

Furthermore, and importantly, even if Poston's accommodation request is presumed reasonable on its face, an employer does not fail to provide a reasonable accommodation when there is more than one accommodation, and the employer chooses "[a] less expensive accommodation[,] [an] accommodation that is easier to provide[,]" *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996), or an accommodation other than the accommodation that the employee prefers. *Trepka v. Bd. of Educ.*, 28 F. App'x. 455, 459 (6th Cir. 2002) (citation omitted).[24] In *Hankins*, the Sixth Circuit expressly noted that "it does not matter whether [plaintiff's requested accommodation] would have been a reasonable accommodation, so long as [the employer] made available other reasonable and effective accommodations[.]" *Hankins*, 84 F.3d at 800. In addition, "the regulations provide that a disabled employee is not required to accept an accommodation, but if he chooses to reject the accommodation, and he 'cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered a qualified individual with a disability.'" *Keever*, 145 F.3d at 812 (quoting 29 C.F.R. § 1630.9(d)).

Here, there is strong, unrefuted evidence of very extensive, good faith efforts on the part of the School to reach agreement with Poston as to reasonable accommodations, with a thorough interactive process, including many meetings over long periods of time and three separate written accommodation plans.

---

[24] In other words, even if Poston had shown that her request was reasonable on its face, the School was still free to choose a different reasonable accommodation. "[A]n employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided." *Hankins*, 84 F.3d at 800-01 (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68-69, 107 S. Ct. 367, 93 L. Ed. 2d 305 (1986)). Further, although the School has not specifically argued that Poston's request for materials in 18-point font would have imposed an "undue hardship" (and the Third Plan granting that request suggests that, although it likely was a hardship, it may not have been *unduly* so), there is nothing in the law that prohibited the School from first exploring less burdensome accommodations.

In the First Plan, the School agreed to provide most materials in 14-point font or larger, but ultimately found that too difficult for several reasons specifically expressed in the Second Plan. (*Compare* Fortner Aff. Ex. D at 508, *with* Fortner Aff. Ex. F at 519.) As an alternative, in the Second Plan, the School indicated that provision of a laptop with Zoomtext software, along with access to electronic copies of documents either on the School computer's shared drive or by email, would permit Poston to view all materials. Finally, in the Third Plan, the School agreed, *inter alia*, to supply written materials in 18-point font, as well as hard copies in accessible format (recognizing Poston's inability to view multiple documents on her computer), and to provide advance copies of videos (or internet links). (Fortner Aff. Ex. U at 559.)[25] Even though these agreements may not have acceded completely to Poston's specific requests, there is no requirement that the employee's exact preferences be honored.

Poston asserts that materials not printed in 18-point font were "not effective[]" because they "limited [her] ability to participate in meetings that included both a presentation and handouts, discussion of lengthy documents, or a comparison of multiple documents." (Poston Aff. ¶¶ 23, 24.) "[T]he ADA's implementing regulations require employers to provide reasonable accommodations not only to enable an employee to perform his job, but also to allow the employee 'to enjoy equal benefits and privileges of employment as are enjoyed by . . . similarly situated employees without disabilities.'" *Gleed*, 613 F. App'x at 538-39 (quoting 29 C.F.R. § 1630.2(o)(1)(iii)) (alteration in original).[26] The "benefits and privileges" are what must be "equal," not their enjoyment. Poston does not say that the accommodations provided by the School

---

[25] This lawsuit was filed during the time the Third Plan was being negotiated and before it was executed.

[26] Poston does not assert that she is unable to perform her job. Rather, her complaint relates to her ability to participate in trainings and in-service sessions.

*prohibited* her from participating in training sessions, thereby denying her those benefits. Therefore, she *did* "enjoy equal [*i.e.*, the same] benefits and privileges of employment" as other employees -- other employees received training and, *with* the accommodations provided, Poston also received training. The accommodations provided by the School permitted Poston to *see* documents that she would otherwise have been unable to see; in other words, the School reasonably accommodated her vision disability. The fact that the chosen accommodations did not also permit Poston to see all the documents *simultaneously*, as she would have preferred, is of no consequence to the analysis.

The accommodation plans also required Poston to promptly inform Fortner or his designee whenever the agreed-upon accommodations were not provided. She routinely failed to do so, waiting long periods of time and then filing numerous internal EEO complaints,[27] rendering impossible more immediate response by the School. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) ("[B]oth parties have a duty to participate [in the interactive process] in good faith.") (citations omitted); *see also Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 946 (2d Cir. 2008) ("An employee who is responsible for the breakdown of [the] interactive process may not recover for a failure to accommodate.")

Here, the undisputed material facts demonstrate that the School has provided Poston with effective and reasonable accommodations in the area of job training in a consistent and good faith manner. As a result, Poston has failed to establish that the School discriminated against her on the basis of her disability. All of Poston's claims fail.

---

[27] Poston does not argue that filing internal EEO complaints was her way of notifying Fortner, nor would this have been within the spirit of the accommodation plans between the parties.

## III. CONCLUSION

For the reasons set forth herein, the motion for summary judgment of defendant Massillon City Schools is **granted**.

**IT IS SO ORDERED**.

Dated: July 2, 2018

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**